THE BENSAMOCHAN LAW FIRM INC.
Eric Bensamochan, Esq. SBN 255482
Deborah C. Silver, Esq. SBN 128495
9025 Wilshire Blvd Suite 215
Beverly Hills, CA. 90211
Telephone: (818) 961-0138; Facsimile: (818) 230-1931
Email: eric@eblawfirm.us
Email: deborah@eblawfirm.us

Schreiber & Schreiber, Inc.
Eric A. Schreiber, Esq. SBN 194851
Ean M. Schreiber, Esq. SBN 284361
16633 Ventura Blvd Suite 1245
Encino, CA. 91436
Telephone: (818) 789-2577: Facsimile: (818) 789-3391
Email: eric@schreiberlawfirm.com
Email: ean@schreiberlawfirm.com

Attorney for Plaintiffs Lena Evans, Roni Shemtov, and Shbadan Akylbekov

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LENA EVANS, RONI SHEMTOV, and SHBADAN AKYLBEKOV, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PAYPAL,INC., a Delaware Corporation; and DOES 1-25, inclusive, <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT:** <br> **(CLASS ACTION)** <br><br> 1. CONVERSION <br><br> 2. CIVIL RICO 18 U.S.C. § 1964(c) <br><br> 3. VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT 15 U.S.C. §1693 ET SEQ. <br><br> 4. BREACH OF WRITTEN CONTRACT; <br><br> 5. BREACH OF FIDUCIARY DUTY; <br><br> 6. VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200 <br><br> 7. UNJUST ENRICHMENT; <br><br> 8. DECLARATORY RELIEF; <br><br> 9. ACCOUNTING |

**CLASS ACTION**
**DEMAND FOR JURY TRIAL**

Plaintiffs LENA EVANS, RONI SHEMTOV, and SHBADAN AKYLBEKOV (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, through their undersigned counsel, alleges for their Class Action Complaint against Defendant, PAYPAL, INC., ("Defendant") based upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including the investigation conducted by their counsel, as follows:

I.  **NATURE OF THE ACTION**

1.   Plaintiffs bring this class action against Defendant PAYPAL, INC. ("PayPal") to recover damages and other relief available at law and in equity on behalf of themselves, as well as on behalf of the members of the class defined herein, to rectify PayPal's inequitable and unconscionable conduct detailed herein.

2.   This action stems from Defendant's widespread business practice of unilaterally seizing funds from its clients' financial accounts, without cause and without any fair or due process.

3.   PayPal places a "hold" on *Plaintiffs' own funds* in their *own PayPal accounts.* PayPal has failed to inform Plaintiffs and members of the class of the reason(s) for the actions PayPal has taken, even telling Plaintiffs and members of the class that they will "have to get a subpoena" to learn the simple information as to why PayPal was holding, and denying Plaintiffs, access to their own money.

4.   PayPal excuses its unlawful seizure based on an alleged violation of its Acceptable Use Policy ("AUP") without stating in what way Plaintiffs' use of their PayPal accounts violates the AUP, and without even bothering to provide Plaintiffs with a copy of the AUP at or around the time that Plaintiffs began using PayPal.

5.   PayPal's application of an unlawful and unenforceable liquidated damages clause, which is a contract of adhesion, without any causal connection to any damages PayPal actually suffered, as a justification for its wholesale seizure of the entire balance of

Plaintiffs' PayPal accounts, and transferring said balance to PayPal's own account, for PayPal's own use, is inequitable and unconscionable, amounting to nothing less than a conversion of funds which do not belong to PayPal.

6.   Defendant operates the immensely popular PayPal online payment platform. As part of this platform, users such as Plaintiffs and the proposed class members maintain account balances which includes funds the users have transferred into the PayPal platform as well as money sent to the users by customers and other users. These funds belong to the users, not Defendant.

7.   Nevertheless, Defendant has adopted a business practice of unilaterally seizing some or all of its users' funds when Defendant merely suspects the user in question violated Defendant's AUP, which is a set of restrictions Defendant places on certain transactions made through the PayPal platform.

8.   Upon information and belief, Defendant seizes these funds without first obtaining any conclusive determination of actual breaches by the users of the AUP – indeed, Defendant does so without even conducting a reasonable investigation to determine whether any violation occurred.

9.   Rather, Defendant has adopted a business policy of "shooting first and asking questions later" – taking the money for itself and only afterwards, and occasionally, interacting with the users to determine whether the seizure was appropriate.

10.  Moreover, the amounts that Defendant seizes bear no relationship to any actual damages suffered by Defendant. Rather, Defendant arbitrarily seizes amounts based on a liquidated damages provision buried in Defendant's User Agreement which has no connection to the actual damages suffered by Defendant – indeed, which is often used where Defendant has suffered ***no*** damages whatsoever.

11.  PayPal violates its own Agreement by failing to provide adequate notice to users whose accounts have had holds placed on them. When PayPal informs individuals whose funds are being held of the holds, it does not inform such users why such funds are being

held, how they can obtain a release of the hold, and/or how they can avoid future holds being placed on their accounts.

12. The Agreement requires PayPal to, at a minimum, provide notice to such users of any hold placed on their accounts that includes both the reason for the hold and an opportunity to request restoration of access to the held funds. PayPal's "notice" falls far short of what is required. As a result, Plaintiffs have no idea why their money is "held" by PayPal.

13. PayPal seizes the money permanently after the 180-day hold period ends, without notice and without explanation.

14. PayPal's user agreement and acceptable use policy cannot be used as a "license to steal." There is no equitable or legal argument which condones theft.

## II. JURISDICTION AND VENUE

15. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action where a substantial number of the members of the proposed class of plaintiffs are citizens of a state different from Defendant and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs.

16. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in the State of California, and regularly solicits and conducts the business at issue in this Complaint within the State of California.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims asserted herein occurred in the Northern District of California, and specifically the County of Santa Clara, where Defendant is headquartered and where Defendant conducts extensive business.

18. This Court has original subject-matter jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO").

CLASS ACTION COMPLAINT

19.     This Court has jurisdiction over Plaintiffs' related state and common law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

20.     This Court further has personal jurisdiction over Defendants under 28 U.S.C. § 1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, that Court may cause parties residing in another district to be summoned to that district if the "ends of justice require" it.

21.     Defendants purposefully directed conduct at this forum with respect to their scheme to unlawfully seize monies from user accounts of Plaintiffs and the Class members, and to convert and divert those monies for its own use by transferring those monies into PayPal's own accounts, under the guise of purported violations of its Acceptable Use Policy ("AUP") where, in fact, there is no evidence that Plaintiffs and Class members committed any illegal acts in the use of their PayPal accounts.

22.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district. Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because Defendants conduct and/or transact their affairs in this District given each Defendant's participation in the Enterprise, as alleged below.

## III.    **THE PARTIES**

23.   Plaintiff Lena Evans ("Evans") is a natural person who resides in San Diego, California. Ms. Evans is a member of the putative class defined herein, and has been a PayPal user for over 22 years since she opened her Ebay account in or around August of 1999.

24.   Plaintiff Roni Shemtov is a natural person who resides in Los Angeles, California. Ms. Shemtov is a member of the putative class defined herein, and has been a PayPal user since 2014.

25.   Plaintiff Shbadan Akylbekov operates businesses located in Chicago, Illinois. Mr. Akylbekov is a member of the putative class defined herein and has been a PayPal user since March of 2016.

26.   Defendant Paypal, Inc. is a Delaware corporation. Upon information and belief, its corporate headquarters are located at 2211 North First Street, San Jose, California 95131. *See* https://www.paypal.com/in/webapps/mpp/about.

27.   The true names and/or capacities, whether individual, corporate, associate or otherwise, of Does 1 through 25, inclusive, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereupon allege that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and thereby proximately and legally caused the injuries and damages to Plaintiffs as hereinafter alleged. Plaintiffs will ask leave of court to amend this Complaint to insert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

## IV.   FACTUAL BACKGROUND

### A.   The PayPal Financial Platform

28.  Defendants operate PayPal, an immensely popular digital payments platform with an estimated 325 million active account holders worldwide.

29.  Through Defendants' platform, users make online money transfers to other users, serving as an electronic alternative to traditional paper methods such as cash, checks and money orders. The company further operates as a payment processor for online vendors, auction sites and other commercial users.

30.  As part of the functionality of Defendants' platform, users may maintain a PayPal balance account where funds are kept until used or transferred by the account holder. As with traditional banks, PayPal users can transfer funds into their PayPal balance accounts from other banking sources. In addition, they can receive payments to their PayPal accounts

from other users or third parties. Vendors and service providers in particular have the option of receiving payments from their customers directly to their PayPal accounts.

31.  When obtaining a PayPal user account, each user is purportedly required to indicate they agree to Defendant's "User Agreement." The User Agreement is a dense document which in its current form spreads over nearly seventy pages when downloaded as a PDF. See https://www.paypalobjects.com/marketing/ua/pdf/US/en/ua-092121.pdf.

32.  The current version of the User Agreement is 65 pages and can be found at the following link: https://www.paypal.com/us/webapps/mpp/ua/useragreement-full

    "The user agreement will be effective for all users as of December 10, 2021."

33.  Moreover, the User Agreement is presented as a "take it or leave it" agreement with no opportunity for users to negotiate portions before registering their accounts. Although the User Agreement has been amended throughout the relevant time period, at all relevant times the User Agreement constituted a lengthy contract of adhesion with no opportunity for users' revisions.

34.  PayPal's actions are all the more unreasonable in light of the fact it is attempting to invoke a contract term in a classic contract of adhesion. The language upon which PayPal relies is contained in a form contract that is viewed online. It is provided on a take it or leave it basis.

35.  There is a tremendous disparity in bargaining power, as a predominant portion of members of the Class need to be able to accept payment via PayPal in order to sell goods.

36.  To interpret the ambiguous language upon which PayPal apparently relies in PayPal's favor is against all equity and contrary to prevailing rules of contractual construction.

37.  Indeed, PayPal's behavior violates the covenant implicit in all contracts - but more so, implicit in contracts of adhesion such as the PayPal User Agreement - to act and deal in good faith.

38. Among the terms in the User Agreement is a provision stating that "[i]f [the user] violated our Acceptable Use Policy, then you're also responsible for damages to PayPal caused by your violation of this policy."

39. The provision goes on to state that:

"If you are a seller and receive funds for transactions that violate the Acceptable Use Policy, then in addition to being subject to the above actions you will be liable to PayPal for the amount of PayPal's damages caused by your violation of the Acceptable Use Policy. You acknowledge and agree that $2,500.00 U.S. dollars per violation of the Acceptable Use Policy is presently a reasonable minimum estimate of PayPal's actual damages - including, but not limited to, internal administrative costs incurred by PayPal to monitor and track violations, damage to PayPal's brand and reputation, and penalties imposed upon PayPal by its business partners resulting from a user's violation - considering all currently existing circumstances, including the relationship of the sum to the range of harm to PayPal that reasonably could be anticipated because, due to the nature of the violations of the Acceptable Use Policy, actual damages would be impractical or extremely difficult to calculate. PayPal may deduct such damages directly from any existing balance in any PayPal account you control."

40. The AUP itself is not included in the User Agreement, but rather is a separate document that users must access via a hyperlink or otherwise located on Defendant's website.

41. These provisions explicitly only allow for Defendant to collect damages if there has been a violation of the AUP – not merely a suspected violation, or an alleged violation. Moreover, even where there is an actual violation, users are expressly only liable to Defendant for Defendant's "damages" caused by said violation.

42. Nevertheless, Defendants routinely engage in "self-help" under the cover of this provision by withdrawing money – sometimes entire account balances – from its users' accounts and transferring those funds to itself based merely on *suspected* or *alleged*

violations of the AUP. Upon information and belief, Defendants do so without first conducting any reasonable investigation to determine whether an actual violation of the AUP occurred, much less obtaining a final judgment or court order confirming the purported breach of the parties' agreement. Indeed, Defendants often decline to even contact the user in question to obtain an explanation for the activity before seizing the funds.

43. Moreover, Defendants routinely deduct sums from its users' balances which have no correlation to any damages actually suffered by Defendants – indeed, Defendants do so even if it suffered no demonstrable damages whatsoever.

44. To make matters worse, Defendants offer no reasonable way for users to challenge Defendants' actions or to obtain any due process from Defendants. As noted above, Defendants routinely act without first contacting the user in question or allowing them any opportunity to explain or dispute whether the activity is in violation of the AUP. And once a user becomes aware of Defendants' actions, they are often unable to obtain any assistance through Defendants' mediocre customer support. Even if the user is able to reach a live customer support employee of Defendants, the employee is typically either unable or unwilling to provide any meaningful information about the seizure or a reasonable means of challenging Defendants' decision.

**B.**    **Allegations Specific To Named Plaintiffs**

    *1.*    *Lena Evans*

45. Ms. Evans has been using the PayPal platform for over 22 years. She began using PayPal when she opened her Ebay account in or around August of 1999.

46. She uses PayPal for buying and selling varied items (used and new articles of clothing), mostly on Ebay.

47. She also uses PayPal for her non-profit organization ("Poker League of Nations" -- also known as "PLON") which helps women with various needs (veterans, breast cancer, child custody and other varied needs).

48. She also uses PayPal to exchange money for a poker league she owns and manages.

49.  Without any advance warning, on or about November 22, 2020, Ms. Evans learned that her PayPal account was frozen.

50.  On or about May 22, 2021, Ms. Evans learned that PayPal seized $26,984.00 from her PayPal account without ever telling Ms. Evans why.

51.  Ms. Evans emailed PayPal a number of times, but she never received any response. She also tried calling PayPal a number of times, but was never able to reach a live person.

### 2. *Roni Shemtov*

52.  Ms. Shemtov has been using PayPal since 2014, to sell yoga clothing on Ebay.

53.  In March of 2017, Ms. Shemtov learned that PayPal froze her account.

54.  Ms. Shemtov made multiple attempts to reach a live PayPal employee on the telephone, but the employees she reached told her that her account was frozen and closed, and then hung up on her. She was never given any reason why her account was terminated.

55.  At some point she learned that between March 24, 2017 and December 27, 2017, PayPal was investigating her, but she did not know why.

56.  Six months later, in September of 2017, Ms. Shemtov learned that PayPal seized $10,000 from her PayPal account.

57. On or about November 26, 2019, Ms. Shemtov learned that PayPal seized another $32,351.87 from her PayPal account. A true and correct copy of a screenshot evidencing the amount and date of the seizure is attached hereto as **Exhibit "1"** ($32,351.87, entitled a "Transfer," on November 26, 2019).

58.  Ms. Shemtov did not use her PayPal account for any transaction after she learned that PayPal seized money from her account other than checking the balance of her account. When she checked the balance in her account, Ms. Shemtov learned that she had a zero balance.

59.  Ms. Shemtov sent a letter to PayPal's lawyer after learning her name was Cassandra Knight, to PayPal's address, listed as "2211 N. 1st  St, San Jose, CA. 95131-2021" -- at the following website: https://apps.calbar.ca.gov/attorney/Licensee/Detail/175696.

60.  Ms. Shemtov did not receive any response from PayPal's lawyer, Cassandra Knight.

61.  She tried calling PayPal and spoke with a different person on at least three different occasions. One person told Ms. Shemtov that she violated PayPal's Acceptable Use Policy

("AUP") by using the same IP address and computer that other PayPal users used -- notwithstanding that other PayPal users had different names, social security numbers and addresses than Ms. Shemtov.

62.   Another person told Ms. Shemtov that she violated PayPal's AUP by having and using multiple PayPal accounts, which is not true, Ms. Shemtov has only ever had and used one PayPal account.

63.   A third person employed by PayPal told Ms. Shemtov that she violated PayPal's AUP by selling her yoga clothing at 20-30% below the retail price, which is not relevant. She was selling authentic merchandise. It was her decision to set the price for the items of clothing which she was selling.

64.   All the reasons PayPal employees gave Ms. Shemtov for freezing her account and for seizing $42,737 from her PayPal account are ludicrous.

65.   Ms. Shemtov was sent an IRS form dated 9/1/2020, stating that she owed taxes on this $42,737 which PayPal seized from her!

66.   Ms. Shemtov believes that she ended up having to pay approximately $1,000 in taxes on money that PayPal seized from her.

### 3.   *Shbadan Akylbekov*

67.   Mr. Akylbekov began using PayPal on May 16, 2016, opening an account for his personal use.

68.   His wife, Aigerim Tobokelova, opened a separate PayPal account in the name of her wholly owned company, Azyk Logistics, Inc., in or around January of 2020.  Azyk Logistics, Inc. performs truck repair services, owns and rents trucks, and uses trucks for interstate hauling.

69.   On January 4, 2020, Mr. Akylbekov began using the Azyk Logistics PayPal account for the sale of Hyaluron Pens. He is the CEO of Hyaluron Pen Store, LLC, a company that was created on June 12, 2020.

70.   A Hyaluron Pen is a biologic injectable using hyaluronic acid, which is a beauty product for the treatment of facial wrinkles and acne scars. The device is manufactured by a Korean company. It has the European equivalent of FDA approval. While not yet approved by the FDA the product is very popular.

71.   Mr. Akylbekov also operates a real estate business.

72.   About 2-3 months after Mr. Akylbekov started using PayPal for the sale of Hyaluron Pens he began hearing from customers that they were not able to complete their transactions using PayPal. It was only then that Mr. Akylbekov learned that PayPal had limited his account without informing him.

73.   PayPal did not give him any explanation for limiting his account. He was told by someone from PayPal that his funds would be held in his account for 180 days, after which they would be made available to him for transfer to his bank account.

74.   He received payments for Hyaluron Pens until March 4, 2020, after which his PayPal account was limited.

75.   On May 3, 2021, Mr. Akylbekov sent an email message to PayPal referring to a telephone conversation with PayPal customer service representative Maria Patricia, stating as follows:

> "To whom it may concern from PayPal,
>
> We have received your message from the BBB complaint we have filed.
>
> We just have a couple more questions.
>
> 1. Our account was put on limitations on March 4, 2020. We were told to wait 180 days to hear back about our account and were informed that we would be able to transfer the money out. However, on August 4, 2020, without any warning the money was transferred to PayPal and we were never notified of this transfer or the decision that PayPal came down to. The very last transaction was done by PayPal on August 4, 2020 where the funds of $172,206.43 was transferred to PayPal. We want to know why our funds were emptied to PayPal.
>
> 2. We called and talked to your customer service and account limitation team after our account was limited, we were given no answer other than to wait 180 days for PayPal to come to a decision and that we would receive an email once that 180 days passed. It's been over 180 days and ever since the 180 days we've been calling PayPal trying to figure out what solution you guys came down to and we haven't heard anything. We didn't receive that email that was promised to us and we want to know why we didn't receive this email.
>
> 3. We finally heard on May 3, 2021, when we talked to your customer service team, Maria Patricia, who informed us why our account was closed, and where the funds of $172,206.43 that PayPal took was. She informed us that from our transaction history that after the August 4,2020, that withhold amount of $172,206.43, some of the money was refunded back to our customers and some of the amount was used for "damages caused by us to PayPal from the user policy that we broke.

From our side, the only transaction that we could see was the one of
August 4, 2020 and nothing after that. We were informed that she will download
those transactions she could see and send it to us but
when we received the email there was no attachment.
We contacted multiple times trying to receive this attachment of our transaction
history of where that $172,206.43 went to. We haven't received anything yet, so we
are demanding that we get a copy of this transaction of PayPal refunding that
$172,206.43 to our customers and exactly how much PayPal is keeping for the
damage.

4. We are also receiving calls saying that our account is at a negative
balance of $127.25 because of a refund of a customer. We contacted
your customer service asking where this amount was coming from and
was informed that they do not see this negative charge. We would
happily send that money back to our customer, but we were told PayPal
refunded all our funds so that customer should already have received
her refund from PayPal either way. So why are we still receiving these
messages and calls.

Sincerely, Aigerim Tobokelova"

76.  From the beginning of June 2020, multiple customers contacted Mr. Akylbekov,
stating that PayPal sent them invoices to pay for orders they did not place, during the time
that PayPal had limited the PayPal account used for sales of the Hyaluron Pens. True and
correct copies of the customer communications are attached hereto as **Exhibit "2."**

77.  Mr. Akylbekov kept checking the balance in his PayPal account from time to time,
and learned at or around August 4, 2020, that PayPal had seized $172,206.43 from his
account, without explanation and without notifying him that the funds had been seized by
PayPal and transferred to PayPal's account.

78.  After calling and speaking with different PayPal customer service employees over
the telephone, Mr. Akylbekov received no explanation why PayPal seized the money in his
PayPal user account.

79.  Mr. Akylbekov sent two letters to the legal department of PayPal, to its address at
2211 North 1st Street, San Jose, CA. 95121, but he never received any reply.

80.  Mr. Akylbekov then filed a Complaint against PayPal with the Better Business
Bureau and thereafter received a reply to his Better Business Bureau Complaint No. 914533,
from Soumya A. R., Executive Escalations for PayPal.

81.   This letter dated May 18, 2021, claimed that Aigerim Tobokelova, the wife of Shbadan Akylbekov, violated PayPal's User Agreement and Acceptable Use Policy ("AUP") by accepting payments for the sale of injectable fillers not approved by the FDA.

82.   This letter claimed that the money seized was debited from her PayPal account balance "for its liquidated damages arising from those AUP violations pursuant to the User Agreement."

83.   Mr. Akylbekov never received a copy of the AUP or the User Agreement until PayPal limited his account and seized the monies from his PayPal user account, transferring it to PayPal's own account, without notice or explanation.

84.   After discovering that his account was limited, Mr. Akylbekov was informed of the AUP and was referred to a link to the AUP which was accessible from his PayPal account.

85.   PayPal never returned the $172,206.43 to his PayPal user account.

86.   PayPal later claimed that it used these funds to reimburse customers who had purchased the Hyaluron Pens, and to compensate PayPal for its damages.

87.    No customer ever told Mr. Akylbekov that he or she received a refund from PayPal. On information and belief, PayPal kept the entire $172,206.43 for itself, without giving a refund to any customers.

88.    In the letters sent to PayPal's legal department, Mr. Akylbekov requested documents which evidenced the amounts and identity of customers that were purportedly issued refunds.

89.   He was told by a PayPal customer service supervisor that the documents were being downloaded and would be provided to him within 2 days. To this day no documents were ever given.

90.   The May 18, 2021, letter references a customer requesting a refund because the item was not received. Instead of using some of the $172,206.43 it seized, PayPal demanded that Mr. Akylbekov pay this customer, which he did.

Mr. Akylbekov asked PayPal why a customer was requesting a refund after PayPal had claimed that it issued refunds to his customers related to his sale of the Hyaluron Pens.

91.   PayPal later sent a Form 1099K to Azyk Logistics, Inc., a company owned by Mr. Akylbekov's wife, stating that the sum of $162,517.19 was paid as the "gross amount of payment third party network transactions" even though PayPal seized all of this money and

transferred it to PayPal's own account, and never returned a cent of that money to his PayPal user account.

92.   PayPal essentially claimed a deduction for an expense that it never paid. PayPal seized $172,206.43, while reporting only $162,517.19 to the IRS.

93.   PayPal's transactions and practices are illegal, highly questionable and akin to outright theft.

94.   It is wrong for Plaintiffs and Class members to pay taxes on money which PayPal wrongfully seized from their PayPal user accounts

## V.  CLASS ACTION ALLEGATIONS

95.   This action satisfies the prerequisites for maintenance as a class action provided in Fed. R. Civ. P. 23, as set forth herein.

96.   **Class Definition**. Plaintiffs bring this action individually and on behalf of the following class of similarly situated persons (the "Class"), of which Plaintiffs are each members: All natural persons or legal entities who, within the applicable statutes of limitation, were PayPal users and had funds seized from their accounts by Defendants based on a purported breach of Defendants' Acceptable Use Policy.

97.   Excluded from the Class are Defendants and any of their respective officers, directors or employees, the presiding judge, Class counsel, and members of their immediate families, and persons or entities who timely and properly exclude themselves from the Class.

98.   The members of the Class are so numerous and geographically dispersed throughout the United States and the entire world such that joinder of all members is impracticable. Plaintiffs are informed and believe and thereon allege that there are easily thousands of persons in the Class. The exact number and identity of Class members is unknown to Plaintiffs at this time and can only be ascertained from information and records in the possession, custody or control of Defendants.

99.   There are questions of law or fact common to all members of the Class including, but not limited to, the following:

- Whether Plaintiffs and each member of the Class were users of Defendant's PayPal service;

- Whether Plaintiffs and each member of the Class had some or all of their PayPal funds seized by Defendants for alleged violations of Defendants' AUP;

- Whether Defendants conducted any meaningful investigation before unilaterally seizing the class members' funds;

- Whether Defendants were permitted to engage in "self-help" by deducting funds for an alleged breach of the parties' agreement without first obtaining a determination of actual violation;

- Whether Defendants offered Plaintiffs and each member of the Class any meaningful opportunity to dispute Defendants' accusation of breach, either before or after Defendants acted; and

- Whether Defendants suffered any demonstrable, actual damages due to Plaintiffs' actions.

100. The claims of Plaintiffs are typical of the claims of the Class, in that they arise out of Defendants' uniform conduct and business practices.

101. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of complex and class action litigation. The interests of Plaintiffs are aligned with, and not antagonistic to, those of the Class.

102. A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be nearly impossible for members of the Class to individually redress the wrongs done to them in separate actions. Individualized rulings and judgments could further result in inconsistent relief for similarly-situated individuals.

# FIRST CAUSE OF ACTION

## (CONVERSION)

103.     Plaintiffs incorporate each and every paragraph of this Complaint by reference as though fully stated and/or set forth herein, and further state and allege as follows.

104.     Conversion is any act of dominion wrongfully exerted over the personal property of another. "Credit card, debit card, or PayPal information may be the subject of a conversion." [*Welco Electronics, Inc. v. Mora*, 223 Cal.App.4th 202, 212 (2014).] "[T]he tort of conversion has been adapted to new property rights and modern means of commercial transactions." Id.

In the *Welco* case, "Defendant wrongfully caused a charge to plaintiff's credit card account by having a specific sum of money paid through defendant's credit card terminal into defendants bank account.   Plaintiff had a property right in its credit card account because plaintiff's interest was specific, control over its credit card account, and an exclusive claim to the balance.   (See *Kremen v. Cohen*, supra, 337 F.3d at p. 1030.) "

Similarly, in the instant case, Plaintiffs and Class members with PayPal accounts have specific control over their accounts and an exclusive claim to the balance in their accounts. When PayPal transferred funds from *their* PayPal accounts to PayPal's own account PayPal committed a conversion.

"In both instances, a party is deprived ultimately of money.   By, in effect, taking from plaintiff, or without authorization transferring plaintiff's rights in, a certain identifiable sum equivalent to money, defendant has converted an intangible property right." *Welco*, supra, 223 Cal.App.4th at 214.

105.     "PayPal provides an intermediary account for internet purchases.   PayPal charges the seller a fee for its service.   The customers fund their PayPal accounts through electronic transfers from their own financial institution (e.g., checking account, debit card, or credit card).   PayPal keeps the customers' financial information confidential, thereby providing a measure of security for online purchases." (*In re Easysaver Rewards Litig.*

CLASS ACTION COMPLAINT

1    (S.D.Cal.2010) 737 F.Supp.2d 1159, 1163, fn. 1.)" *Welco*, supra, 223 Cal.App.4th at 213,

2    footnote 4.

3          106.          "See *In Re Checking Account Overdraft Litig*., 694 F.Supp.2d 1302, 1323

4    (S.D.Fla.2010) (applying California law, holding that conversion action is available for

5    wrongful debiting of funds from customer's account because it interfered with [the]

6    plaintiffs' right to possess and use those funds)." *Welco*, supra, 223 Cal.App.4th at 213,

7    citing *Acme Paper Co. v. Goffstein*, 125 Cal.App.2d 175, 179-180 (1954).

8          107.          As the facts in this Complaint demonstrate, Plaintiffs and Class members

9    "stated a cause of action for and presented substantial evidence in support of, conversion."

10   *Welco*, supra, 223 Cal.App.4th at 216.

11         108.          At all times relevant to this litigation, Defendants owed Plaintiffs and the

12   Class members a duty with respect to the funds maintained in users' PayPal accounts not to

13   convert those funds to Defendants' own use and benefit.

14         109.          Defendants breached that duty on many occasions and such breaches were

15   the actual and proximate cause of harm to Plaintiffs and the Class members.

16         110.          "California cases permitting an action for conversion of money typically

17   involve those who have misappropriated, commingled, or misapplied specific funds held for

18   the benefit of others.]"   (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil &*

19   *Shapiro, LLP*, supra, 150 Cal.App.4th at pp. 396, italics added.)" Welco, supra, 223

20   Cal.App.4th at 216.

21         111.          Such harm includes interest on the monies Defendants unlawfully seized and

22   withheld from users' PayPal accounts which belong to Plaintiffs and the Class members.

23         112.          Such harm includes monies properly spent in pursuit of the monies

24   Defendants unlawfully seized from users' PayPal accounts which belong to Plaintiffs and

25   the Class members.

26         113.          Defendants' actions, refusing to return the funds they wrongfully seized from

27   users' PayPal accounts which belong to Plaintiffs and the Class members, are fraudulent,

28   oppressive and malicious, justifying an award of exemplary and/or punitive damages.

114.     At the time of conversion, Plaintiffs and the Class members had an immediate right of possession to the monies Defendants unlawfully seized from their PayPal accounts.

115.      In some instances, Defendants told Plaintiffs and the Class members that they were limiting their PayPal accounts and holding the monies belonging to them for a period of 180 days, and afterwards would release the funds for transfer to the bank accounts of Plaintiffs and the Class members.

116.     At no time did Plaintiffs and the Class members consent to this unlawful 180-day hold on the funds in their PayPal accounts.

117.     After the 180-day unlawful hold, Defendants failed to keep their promise to release the funds for transfer, and instead, seized the monies from users' PayPal accounts belonging to Plaintiffs and the Class members, and transferred said monies to PayPal's own account.

118.     In some instances, PayPal, attempting to justify its fraudulent, oppressive and malicious conduct, told Plaintiffs and the Class members that PayPal was entitled to the monies belonging to Plaintiffs and the Class members from users' PayPal accounts because of a purported violation of PayPal's Acceptable Use Policy ("AUP").

119.     Until PayPal limited users' accounts and unlawfully seized monies, Plaintiffs and the Class members never received the AUP or any link by which to access the AUP.

120.     PayPal is not entitled to seize monies in the users' accounts for PayPal's own use even if Plaintiffs and the Class members violated PayPal's AUP.

121.     There has never been any court adjudication that Plaintiffs and the Class members did anything illegal with respect to the activities for which they utilized their PayPal accounts.

122.     In some instances, Defendants claimed the monies they seized would be used to refund customers who had purchased products using PayPal.

123.     On information and belief, Defendants never issued any refunds to customers that purchased products from Plaintiffs and Class members, and instead, PayPal transferred

all the money it seized to PayPal's own account, pursuant to an unenforceable liquidated damages clause that Plaintiffs and Class members never agreed to.

124.    There is a specific, identifiable sum which was seized from each of the users' PayPal accounts of Plaintiffs and the Class members, which is reflected in their PayPal account balances.

125.    "Cases have held that the amount of money converted was readily ascertainable." Even if the conversion were to be treated as a conversion of money, a conversion claim does not require that a specific lump sum of money be entrusted to defendant; the plaintiff must merely prove a specific, identifiable sum of money that was taken from it." Welco, supra, 223 Cal.App.4th at 216.

126.    PayPal never gave Plaintiffs and the Class members notice when PayPal limited their PayPal accounts or when PayPal seized monies from their account balances.

127.    PayPal never even gave Plaintiffs and the Class members any explanation why PayPal seized monies from their users' accounts at the time of seizure.

128.    When Plaintiffs and Class members tried to call and speak with PayPal's customer service representatives, the persons they spoke with did not know the reason why PayPal limited their accounts or why PayPal seized money from their accounts.

129.    When Plaintiffs and the Class members wrote letters to PayPal's legal department they never received any response to their inquiries why PayPal seized monies from their PayPal accounts.

130.    In some instances, Plaintiffs and the Class members filed a Complaint with the Better Business Bureau. It was only after a Complaint was made to the Better Business Bureau that the legal department or some PayPal representative responded to their request for an explanation.

131.    None of the explanations made any sense, and in no way justify legally or factually PayPal's unlawful seizure and conversion, for its own use, monies rightfully belonging to Plaintiffs and the Class members.

132.     Plaintiffs and the Class members respectfully request, pursuant to Section 483.010 of the California Code of Civil Procedure, that this Honorable Court issue a Pre-Judgment Writ of Attachment which will be given to a Sheriff, with instructions to seize the assets of PayPal in an amount that will cover the monies PayPal wrongfully seized and converted to PayPal's own account, which rightfully belong to Plaintiffs and the Class members.

133.     Under this statutory scheme, a plaintiff can obtain relief prior to trial and judgment, and as soon as upon the filing of the complaint.  Code of Civil Procedure Section 483.010 provides that attachment may be sought on claims which are "based upon a contract, express or implied."  These "implied contract" or "quasi-contract" theories include situations where a defendant acquires property through fraud, conversion, or theft and refuses to return it.

134.     Plaintiffs and the Class members respectfully request that this Court also issue an Order placing an equitable lien on the amount of monies PayPal wrongfully seized from them, pursuant to California Civil Code § 2872, where an equitable lien is proper because unjust enrichment and detrimental reliance are implicated.

135.     PayPal has been unjustly enriched by converting and seizing monies not belonging to it, and transferring same to PayPal's own account, instead of releasing said monies back to the rightful owners which are Plaintiffs and the Class members.

136.     When the customers of Shbadan Akylbekov began calling to tell him they were unable to place their orders through PayPal, this is how he learned that PayPal had limited his account.

137.     During the period that his account was limited, in or around June of 2020, PayPal began placing orders for products that his customers did not place, further increasing his emotional distress when his customers began contacting him, telling him that PayPal sent them requests for payments for orders that they did not place.

138.     Plaintiffs and Class members request that this Honorable Court issue an injunction ordering PayPal not to dissipate its assets in an amount to cover the identifiable

sums of monies PayPal unlawfully seized from the user accounts of Plaintiffs and the Class members, in accordance with California Code of Civil Procedure §§ 525 et seq. [*Heckmann v. Ahmanson*, 16 Cal.App.3d 119, 136 (1985).]

139.    The facts stated herein evidence a reasonable probability of success on the issue of Defendants' liability. Furthermore, Plaintiff and the Class members would be harmed should PayPal have unfettered control over funds it wrongfully seized from their PayPal accounts.

140.    Plaintiffs and Class members request attorneys' fees for the costs of recovering the funds which PayPal converted from their PayPal accounts.

**SECOND CAUSE OF ACTION**

**(CIVIL VIOLATIONS OF FEDERAL RACKETEER INFLUENCED and CORRUPT ORGANIZATIONS ACT**
**[18 U.S.C. § 1964(c) ("FEDERAL RICO")]**

141.    Plaintiffs incorporate each and every paragraph of this Complaint by reference as though fully stated and/or set forth herein, and further state and allege as follows.

142.    At all relevant times, Defendants, and each of them, unlawfully, knowingly and intentionally conducted and participated, directly and indirectly, in the conduct of wrongful affairs through a pattern of racketeering activities as set forth below, in violation of Section 1962(c) of RICO, 18 U.S.C. § 1962(c).

143.    At all times, Defendants knew and intended to convert monies in the PayPal accounts of Plaintiffs and Class members by seizing the monies in their accounts without just cause, and without explanation. By means of this practice, PayPal committed an unlawful conversion of these monies, for PayPal's own use. This association-in-fact constitutes an "enterprise" within the meaning of Section 1961(4) of RICO, 18 U.S.C. § 1961(4).

144.     At all times, Defendants, and each of them, were "persons" as that term is defined in Section 1961(3) of RICO, 18 U.S.C. § 1961(3) and are legally distinct from the enterprise.

145.     At all relevant times, the enterprise as described herein was engaged in, and its activities affected, interstate commerce within the meaning of Section 1962(c) of RICO, 18 U.S.C. § 1962(c).

146.     Defendants, and each of them, did willfully and with purpose commit a conversion of monies belonging to PayPal's customers, including Plaintiffs and the Class members, converting their monies to PayPal's own use, constituting wire fraud in violation of 18 U.S.C. § 1343 and 1341, by engaging in the following acts:

   a. Forming and maintaining the RICO enterprise; and

   b. Taking and seizing monies from the PayPal accounts of Plaintiffs and the Class members unlawfully, and converting said monies to PayPal's own use, without notice or explanation, based on a purported breach of Defendants' Acceptable Use Policy.

147.     There is a significant disparity in bargaining power. Plaintiffs and members of the Class, the weaker parties, have placed their funds in accounts over which PayPal has control and PayPal asserts its unchecked ability to seize the funds therein.

148.     While PayPal states that the funds are still the users' own funds, when those funds are in the custody or control of PayPal, it has fiduciary obligations that require it to act in the interests of Plaintiffs and the Class. PayPal has utterly failed to do so.

149.     Instead, Defendants participated in a scheme to unlawfully seize monies from user accounts of Plaintiffs and the Class members, and to convert and divert those monies for its own use by transferring those monies into PayPal's own accounts, under the guise of purported violations of its AUP where, in fact, there is no evidence that Plaintiffs and Class members committed any illegal acts in the use of their PayPal accounts.

150.     Even if there was a violation of PayPal's AUP, this does not justify PayPal to wrongfully seize funds for its own use from the user accounts of Plaintiffs and the Class members.

151.     18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ." 18 U.S.C. § 1962(c).

152.     Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

153.     Defendants' activities include at least four acts of racketeering activity since 2017. Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

154.     One such act took place when PayPal seized $10,000 from Ms. Shemtov in September of 2017, and thereafter seized $32,351.87 from Ms. Shemtov on November 26, 2019. Another such act took place when PayPal seized $172,206.43 from Mr. Akylbekov on August 4, 2020. Another such act took place when PayPal seized $26,984 from Ms. Evans on May 22, 2021.

155.     Other such acts were suffered by the other Class members, which acts were and are continuous and ongoing until this very day.

156.     At all times relevant hereto, and continuing through the present, each Defendant conducted and participated in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

157.     Plaintiffs and Class members with PayPal accounts have specific control over their accounts and an exclusive claim to the balance in their accounts.

158.     PayPal provides an intermediary account for internet purchases.    PayPal charges the seller a fee for its service. The customers fund their PayPal accounts through

1    electronic transfers from their own financial institution (e.g., checking account, debit card,

2    or credit card).

3        159.    Defendants used the Internet and other electronic facilities to carry out the

4    aforementioned Scheme and to conceal their ongoing wrongful activities.

5        160.    PayPal's wrongful actions transferring monies rightfully belonging to

6    Plaintiffs and the other Class members from their user accounts into PayPal's own account

7    constitutes an unlawful conversion.

8        161.    At all times discussed herein, Defendants owed Plaintiffs and the Class

9    members a duty with respect to the funds maintained in users' PayPal accounts not to

10   convert those funds to Defendants' own use and benefit.

11       162.    Defendants breached that duty on many occasions.

12       163.    Defendants engaged in and affected interstate commerce by way of said

13   wrongful seizures.

14       164.    To achieve their common goals, Defendants knowingly and willfully

15   concealed their wrongful actions from Plaintiffs and Class members, not informing them

16   when PayPal limited their accounts, not giving any explanation at the time their accounts

17   were limited, not informing them when PayPal seized money from their user accounts, and

18   not giving any explanation at the time of seizure.

19       165.    As a direct and proximate consequence of the conduct of Defendants and

20   each of them as alleged herein, Plaintiffs and Class members have been injured in their

21   business and property, causing them to suffer monetary damages in amount to be proven at

22   the time of trial.

23       166.    By virtue of the foregoing wrongful activities, Defendants have engaged in a

24   pervasive pattern of unlawful and unfair business practices, causing harm to Plaintiffs and

25   others. Defendants' wrongful conduct, as described above, constitutes a scheme or artifice to

26   convert the monies belong to Plaintiffs and the Class members to Defendants' own use.

27       167.    In furtherance of and for the purposes of executing the foregoing illegal

28   course of conduct and scheme, Defendants used and caused to be used, interstate wire

communications to transmit or disseminate false and/or misleading communications and information, in violation of the wire fraud statutes, 18 U.S.C. §§ 1343 and 1341.

168.    Defendants' use of interstate wire and electronic transfer mechanisms for the transfer and removal of funds from Plaintiffs' and Class members' PayPal accounts is a violation of the statutes.

169.    The use of interstate wire and electronic mechanisms and/or communications were made in furtherance of the Defendants' scheme to commit a conversion of monies belonging to Plaintiffs and Class members, and to divert those monies to PayPal's account for its own use.

170.    Each interstate wire and electronic transfer mechanism and/or communication that was made in furtherance of Defendants' scheme to commit a conversion of monies from the PayPal accounts of Plaintiffs and the Class members, to obtain their monies by false pretenses, constitutes a separate and distinct act of "racketeering activities" as the term is defined in Section 1961(1) of RICO, 18 U.S.C. § 1961(c).

171.    Defendants each committed and/or aided and abetted the commission of these acts of a "racketeering activity."

172.    The predicate acts are common to the Defendants' scheme to conduct the affairs of the RICO enterprise, and the acts are continuing and threatening to continue indefinitely. These predicate acts are chargeable and indictable, as required under Section 1961(1) of RICO, 18 U.S.C § 1961(1).

173.    The racketeering activities were and are related by virtue of common participants, common victims (Plaintiffs and Class members), a common structure and method of commission, a common purpose, and a common result of allowing PayPal to commit a conversion of monies belonging to Plaintiffs and Class members, and diverting said monies to PayPal's own use, relating to items being sold both inside and outside of the United States, thereby defrauding Plaintiffs and Class members of significant monies and unjustly enriching the Defendants and their collaborators.

CLASS ACTION COMPLAINT

174.     The racketeering activities are distinct from the RICO enterprise. The enterprise, as an association-in-fact, was formed to facilitate the payment for online sales on the eBay platform primarily, and to generate fees regardless of PayPal's unlawful and deceptive acts through wire fraud.

175.     Such acts of the Defendants and their collaborators allow them to maintain profitability and conduct enterprises for the purpose of defrauding PayPal's customers.

176.     As a direct and proximate result of the racketeering activities, Plaintiffs and Class members were victims of a conversion by PayPal of the monies in their PayPal accounts. Thus, Plaintiffs and Class members have been "injured in their property" and have standing to sue Defendants and recover damages and costs of bringing this action under Section 1962(c) of RICO, 18 U.S.C. § 1962(c).

177.     By virtue of Section 1962(c) of RICO, 18 U.S.C. § 1962(c), Defendants, and each of them, are jointly and severally liable to Plaintiffs and Class members for three times the damages that Plaintiffs and Class members have suffered as a result of Defendants' scheme to defraud PayPal's customers.

178.     Because of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs and Class members for three times the damages they have sustained, plus the cost of this suit, including reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**
**(VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT**
**[15 U.S.C. § 1693 ET SEQ.])**

179.     Plaintiffs incorporate each and every paragraph of this Complaint by reference as though fully stated and/or set forth herein, and further state and allege as follows.

180.     PayPal's actions as set forth herein violate the Electronic Funds Transfer Act ("EFTA").

181.    The EFTA "provide[s] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b).

182.    An "'electronic fund transfer' means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(6).

183.    PayPal' s receipt of funds electronically from buyers to sellers constitutes an electronic fund transfer. PayPal's deposit of funds into sellers' accounts also constitutes an electronic fund transfer.

184.    A "financial institution" includes people "who, directly or indirectly, hold an account belonging to a consumer". 15 U.S.C. § 1693a(8).

185.    A "consumer" is "a natural person". 15 U.S.C. § 1693a(5).

186.    PayPal is a financial institution within the meaning of the EFTA, and Plaintiffs and the Class are consumers protected by the EFTA.

187.    The EFTA provides that "The terms and conditions of electronic fund transfers involving a consumer's account shall be disclosed at the time the consumer contracts for an electronic fund transfer service...". 15 U.S.C. § 1693(c)(a). Such disclosures include "(3) the type and nature of electronic fund transfers which the consumer may initiate, including any limitations on the frequency or dollar amount of such transfers...; (4) any charges for electronic fund transfers or for the right to make such transfers." 15 U.S.C. § 1693(c)(a)(3)-(4).

188.    The EFTA further provides that "an error consists of (6) a consumer's request for additional information or clarification concerning an electronic fund transfer." 15 U.S.C. § 1693(f)(f). If a consumer documents an alleged error in his or her account, and the financial institution determines that there was an error, "it shall promptly, but in no event more than one business day after such determination, correct the error...including the crediting of interest where applicable." 15 U.S.C. § 1693(f)(b).

189.     If the financial institution determines that there was no error, "it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur." 15 U.S.C. § 1693(f)(d).

190.     Plaintiffs and the Class have requested from PayPal additional information or clarification concerning electronic fund transfers of money into their accounts that is subsequently held and thereafter permanently seized by PayPal for its own use. PayPal has refused to provide Plaintiffs and the Class with any explanation or reasons for the failure to fully transfer the money into their accounts, and why PayPal permanently seized this money for PayPal's own use, in violation of the EFTA.

191.     Financial institutions are "liable to a consumer for all damages proximately caused by the financial institution's failure to make an electronic fund transfer, in accordance with the terms and conditions of an account, in the correct amount or in a timely manner when properly instructed to do so by the consumer." 15 U.S.C. § 1693(h)(a)(1).

192.     Furthermore, "no writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter." 15 U.S.C. § 1693(1).

193.     Additionally, based on the conduct alleged herein, PayPal has violated and failed to comply with sections of the EFTA including but not limited to the following: 15 U.S.C. §§ 1693(c)(a)(2), 1693(g), 1693(f)(a), 1693(f)(c), 1693(m).

194.     It is wrong to assume that sellers of merchandise are beyond the ambit of protections afforded by the EFTA. It is wrong to assume that only purchasers of merchandise where said merchandise is intended to be personally used by the buyer is protected by the EFTA. PayPal customers are consumers which are entitled to the protections set forth in the EFTA.

195.     It is wrong to assume that PayPal is not a financial institution for purposes of applying and making PayPal subject to the EFTA.

196.     The following statistics evidence that PayPal handles as many transactions for online customers as do traditional financial institutions who process credit and debit card transactions for their customers:

- The average PayPal user conducts 40 transactions per year.
- 87.5% of online buyers use PayPal.
- PayPal had $5.46 billion in net revenue in 2020.
- PayPal accounts for 22% of online transactions in the US.
- The average PayPal user has $485 in their account.

https://spendmenot.com/blog/paypal-statistics/

197.     PayPal is an automated clearinghouse, so there is no reason why PayPal is not covered and regulated by the ETA.

198.     PayPal is an authorization service directly resulting in a debit or credit to a customer's account, so there is again no reason why PayPal is not covered and regulated by the ETA.

199.     The EFTA defines a financial institution as a "State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9).

200.     PayPal clearly is a "person" under the EFTA which holds accounts belonging it its customers.

201.     The EFTA is a consumer protection statute intended to protect consumers who use electronic fund transfers, which is precisely what PayPal does.

202.     Business users are consumers. There is no logic or reason to conclude that only purchasers of products intended for their own personal use are protected by the EFTA.

203.     This Court must address PayPal's operating practices which led to widespread complaints by users of the PayPal system. The misconduct by which the claims in this case is predicated cannot be permitted under the User Agreement and Acceptable Use Policy of PayPal. This Court cannot condone theft.

204.    The EFTA was enacted "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). These obligations apply to PayPal. This Court cannot ignore the realities and ever evolving nature of consumer protection. Online purchases make up a huge percentage of the participants in electronic fund and remittance transfer systems, including those of PayPal, which the EFTA was meant to protect and regulate.

205.    While it is true that 15 U.S.C. § 1693a(2) specifies that accounts subject to the EFTA must be "established primarily for personal, family, or household purposes," the EFTA does not limit the ambit of its protections to buyers of products which intend to personally use the products purchased. It may well be that the personal family household would be homeless but for the purchase and sale of products which generate income to sustain that household.

206.    WHEREFORE, accordingly, Plaintiffs and the Class members pray for relief as set forth below.

### FOURTH CAUSE OF ACTION
### (BREACH OF WRITTEN CONTRACT)

207.    Plaintiffs incorporate each and every paragraph of this Complaint by reference as though fully stated and/or set forth herein, and further state and allege as follows.

208.    Plaintiffs and the Class members performed all of the conditions and covenants owed to Defendants under the terms of the User Agreement, except for those obligations that may have been excused by the conduct of Defendants.

209.    Defendants breached the agreement as set forth herein, including but not limited to by seizing funds from Plaintiffs' and Class members' accounts without a determination of an actual violation of the Acceptable Use Policy, and in amounts in excess of the damages suffered by Defendants, if any, pursuant to an unlawful and unreasonable liquidated damages clause in violation of law.

210.     As a proximate and direct result of Defendants' breaches, Plaintiffs and the Class have sustained damages and will continue to sustain damages, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## (BREACH OF FIDUCIARY DUTY)

211.     Plaintiffs incorporate each and every paragraph of this Complaint by reference as though fully stated and/or set forth herein, and further state and allege as follows.

212.     By holding and maintaining Plaintiffs' and the Class members' funds, Defendants were acting as agent and custodian of these funds, and thereby owed to Plaintiffs and the Class members fiduciary duties relating to the funds held by Defendants.

213.     Defendants breached these fiduciary duties to Plaintiffs and the Class members by knowingly acting against their interests and in preference for Defendants' own self-interests, as alleged herein, including but not limited to taking some or all of the funds into Defendants' custody for themselves, without just cause.

214.     As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs and the Class have sustained damages and will continue to sustain damages, in an amount to be proven at trial.

215.     Defendants' conduct was intentional, malicious, fraudulent and oppressive, and in conscious disregard of Plaintiffs' rights and the rights of the Class. An award of punitive and/or exemplary damages against Defendants is therefore appropriate.

## SIXTH CAUSE OF ACTION
## (VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200)

216.     Plaintiffs incorporate each and every paragraph of this Complaint by reference as though fully stated and/or set forth herein, and further state and allege as follows.

217.     The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*., which prohibits unfair competition by prohibiting, inter alia, any unlawful or unfair business acts or practices.

218.     Defendants violated the UCL, by, among other things, engaging in the acts and practices described in this Complaint, including but not limited to seizing users' funds without authorization, without a determination of actual violation of the AUP, in amounts in excess of any actual damages suffered by Defendants, and without a full and fair opportunity to challenge Defendants' actions. These actions defrauded consumers, who were led to believe that their funds were safely placed in Defendants' trust. Moreover, they constituted a breach of Defendants' agreements with its users and a breach of Defendants' fiduciary duties to consumers.

219.     Defendants' conduct as herein alleged has caused Plaintiffs and the Class to suffer injury in fact and to lose money or property. Accordingly, they are entitled to restitution, as well as other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

## SEVENTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)

220.     Plaintiffs incorporate each and every paragraph of this Complaint by reference as though fully stated and/or set forth herein, and further state and allege as follows.

221.     As described herein, Plaintiffs and the Class members conferred upon Defendants an economic benefit, specifically the funds improperly seized by Defendants from its users' accounts.

222.     As a result of Defendants' actions set forth herein, including Defendants' improper seizing of funds without a valid basis and the withholding of those funds and their use pending resolution of this dispute, it would be unjust and unequitable for Defendants to retain such benefits at the expense of Plaintiffs and the Class.

223.     Defendants' conduct was intentional, malicious, fraudulent and oppressive, and in conscious disregard of Plaintiffs' rights and the rights of the Class. An award of punitive and/or exemplary damages against the Defendants is therefore appropriate.

## EIGHTH CAUSE OF ACTION
### (DECLARATORY RELIEF)

224.     Plaintiffs incorporate each and every paragraph of this Complaint by reference as though fully stated and/or set forth herein, and further state and allege as follows.

225.     As alleged herein, an actual controversy has arisen between Defendants on the one hand and Plaintiff and the Class members on the other, as to whether Defendants may unilaterally seize funds from users' accounts without first obtaining a determination of an actual violation of the AUP, and in amounts that exceed Defendants' actual damages, if any.

226.     To resolve the legal and factual questions raised by Defendants and to afford relief from the uncertainty which has precipitated, Plaintiffs and the Class are entitled to issuance of an order stating their rights pursuant to 28 U.S.C. §§ 2201-02, and specifically declaring that Defendants are not entitled to seize funds from users' accounts without a final, judicial determination of actual violation of the AUP; that where there is a final determination of actual violation of the AUP, Defendants are not entitled to deduct damages in amounts exceeding Defendants' actual damages; and declaring all contrary provisions of the User Agreement including any provision providing for liquidated damages void.

## NINTH CAUSE OF ACTION
### (ACCOUNTING)

227.     Plaintiffs incorporate each and every paragraph of this Complaint by reference as though fully stated and/or set forth herein, and further state and allege as follows.

228.     Defendants acted as the agent of Plaintiffs and the Class members with respect to the funds maintained in users' PayPal accounts.

229.     Defendants owe Plaintiffs and the Class members funds which have been seized without a determination of any AUP violation and in excess of Defendants' actual damages, if any. An accounting is appropriate to determine the amount improperly seized.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the Class pray as follows:

1.     That the Court enter an order certifying the Class, appointing Plaintiffs as representatives of the Class, appointing Plaintiffs' counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Class;

2.     For general, specific and compensatory damages, including restitution, in an amount to be proven at trial;

3.     That the Court award Plaintiffs and Class members enhanced (treble) damages, three times the amount of monetary damages proven at the trial of this matter pursuant to 18 U.S.C. § 1964(c);

4.     For punitive and exemplary damages as permitted by law;

5.     For a declaration of Plaintiffs' and the Class members' rights with respect to those funds seized by Defendants and the User Agreement;

6.     For a preliminary and permanent injunction ordering Defendants to cease and desist from engaging in the unfair, unlawful and/or fraudulent business practices alleged herein;

7.     That the Court enter an Order finding that all Defendants are jointly and severally liable for all damage caused to Plaintiffs and the Class members;

8.     For prejudgment and post-judgment interest as provided by law;

9.     For costs of suit, including reasonable attorneys' fees; and

1    10.   For such other and further relief as the Court may deem appropriate, proper and

2          equitable.

3

     DATED:    January 13, 2022

4                                              THE BENSAMOCHAN LAW FIRM INC.

5

6                              By:     /s/ Eric Bensamochan
                                       ERIC BENSAMOCHAN
7                                      Attorney for Plaintiffs Lena Evans,
                                       Roni Shemtov and Shbadan Akylbekov
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1

## **JURY TRIAL DEMAND**

2      Pursuant to L.R. 3-6(a), Plaintiffs, on their own behalf and on behalf of all others similarly

3   situated, hereby demand a trial by jury.

4

5   DATED:         January 13, 2022

6

7                                  THE BENSAMOCHAN LAW FIRM INC.

8

9                      By:           /s/ Eric Bensamochan
                                      ERIC BENSAMOCHAN
10                                    Attorney for Plaintiffs Lena Evans,
                                      Roni Shemtov and Shbadan Akylbekov
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT