LAURA LEIGH GEIST (SBN 180826)
laura.geist@dentons.com
DENTONS US LLP
1999 Harrison Street, Suite 1300
Oakland, CA 94612-4709
Telephone: 415.882.5000
Facsimile: 415.882.0300

JOEL D. SIEGEL (SBN 155581)
joel.siegel@dentons.com
PAUL M. KAKUSKE (SBN 190911)
paul.kakuske@dentons.com
JUDITH SHOPHET SIDKOFF (SBN 267048)
judith.sidkoff@dentons.com
KELLY R. GRAF (SBN 301325)
kelly.graf@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704
Telephone: 213.623.9300
Facsimile: 213.623.9924

Attorneys for Defendant
PayPal, Inc.



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LENA EVANS, RONI SHEMTOV, and SHBADAN AKYLBEKOV, individually and on behalf of all others similarly situated,

Plaintiff,

v.

PAYPAL, INC., a Delaware corporation; and DOES 1-25, inclusive,

Defendants.

No. 5:22-cv-00248-BLF

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PAYPAL, INC.'S MOTION TO COMPEL ARBITRATION

[Declaration of Michelle Squires and [Proposed] Order filed concurrently herewith]

Date: May 26, 2022
Time: 9:00 A.M.
Dept: Courtroom No. 3
Judge: Beth Labson Freeman

Date Action Filed: January 13, 2022
Trial Date: None Set

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**NOTICE**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD, please take notice that Defendant PayPal, Inc.'s ("PayPal") Motion to Compel Arbitration of Plaintiffs Lena Evans, Roni Shemtov, and Shabdan Akylbekov's (collectively, "Plaintiffs") claims will be heard on May 26, 2022 at 9:00 a.m. in the above-captioned court.

PayPal files this Motion as its pre-answer responsive pleading. *See Lopez v. Am. Exp. Bank, FSB*, 2010 WL 2628659, *2 n.4 (C.D. Cal. June 2, 2010) ("'[c]ourts have traditionally entertained certain types of pre-answer motions—such as a motion to compel arbitration . . .'" as sufficient responsive pleading) (quoting *1 Foot 2 Foot Centre for Foot & Ankle Care, P.C. v. Davlong Bus. Solutions, LLC*, 631 F. Supp. 2d 754, 756 (E.D. Va. 2009); *Wolff v. Tomahawk Mfg*., 2022 WL 377926, *5-7 (D. Ore. Feb. 8, 2022) (enforcement of arbitration agreements in Ninth Circuit should be brought pursuant to Federal Arbitration Act rather than Rule 12(b)). In doing so, PayPal expressly reserves the right to file a Rule 12(b) motion in the event its Motion to Compel Arbitration is denied.

PayPal moves this Court pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. Section 4, for an order compelling each Plaintiff to individually arbitrate their claims in the manner provided by the parties' valid, enforceable arbitration agreement, i.e., in a non-class proceeding and under the rules of the American Arbitration Association ("AAA"). Plaintiffs' claims against PayPal relate to and arise out of their use of PayPal's online payment services to digitally send and/or receive money across the U.S. in accordance with PayPal's User Agreement ("UA"), and thus involve interstate commerce. Plaintiffs have failed to initiate arbitrations of their disputes in violation of the UA and refused PayPal's demand that these claims be brought in arbitration.

PayPal's Motion is based upon this Notice, the supporting Memorandum of Points and Authorities, the Declaration of Michelle Squires, pleadings in this action, and upon such further oral and documentary evidence as may be presented before or at the hearing of this Motion.

//

//

## STATEMENT OF RELIEF SOUGHT

PayPal moves this Court for an order compelling each Plaintiff to arbitrate their respective claims on an individual, non-class basis and as provided by the parties' binding arbitration agreement.

Dated: March 16, 2022

DENTONS US LLP

By: _/s/Laura L. Geist_
Laura L. Geist

Attorneys for Defendant
PAYPAL, INC.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ........ 1

II. RELEVANT FACTUAL BACKGROUND ........ 1

A. PAYPAL'S USER AGREEMENT ........ 1

B. THE AGREEMENT TO ARBITRATE ........ 2

C. RESTRICTED ACTIVITIES ........ 3

D. PLAINTIFFS AND THIS LAWSUIT ........ 4

III. ARGUMENT ........ 5

A. THE FAA MANDATES ARBITRATION OF PLAINTIFFS' CLAIMS ........ 5

B. THE AGREEMENT TO ARBITRATE IS VALID AND ENFORCEABLE ........ 6

1. The Agreement to Arbitrate is Part of a Valid User Agreement ........ 7

2. That Paypal Updated Its Terms Does Not Alter The Enforceability of the Agreement to Arbitrate and Class Waiver ........ 8

C. THE BROAD SCOPE OF THE AGREEMENT TO ARBITRATE ENCOMPASSES THIS DISPUTE ........ 9

D. THE ENTIRE ACTION SHOULD BE STAYED, IF NOT DISMISSED ........ 10

IV. CONCLUSION ........ 11



DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1 Foot 2 Foot Centre for Foot & Ankle Care, P.C. v. Davlong Bus. Solutions, LLC*, 631 F. Supp. 2d 754 (E.D. Va. 2009) .......... 2, 7

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) .......... 5

*Andre v. Dollar Tree Stores, Inc.*, 2019 WL 2617253 (D. Del. June 26, 2019) .......... 7

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......... 6, 9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) .......... 6

*Davis v. CACH, LLC*, 2015 WL 913392 (N.D. Cal. Mar. 2, 2015) .......... 6

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) .......... 6

*Diamond Foods, Inc. v. Hottrix, LLC*, 2018 WL 3008562 (N.D. Cal. 2012) .......... 5

*DIRECTV, Inc. v. Imburgia*, 577 U.S. 47 (2015) .......... 6

*Doe v. Massage Envy Franchising*, *LLC*, 2020 WL 7624620 (Del. Super. Ct. Dec. 21, 2020) .......... 6, 7

*Ebner v. Fin. Architects, Inc.*, 763 F. Supp. 2d 697 (D. Del. 2011) .......... 6

*Edelist v. MBNA Am. Bank*, 790 A.2d 1249 (Del. 2001) .......... 8

*In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 8

*Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*. 2018 WL 2933608, *6 (N.D. Ill. June 12, 2018) .......... 9

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000) .......... 6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*James v. Comcast Corp.*, 2016 WL 4269898 (N.D. Cal. Aug. 15, 2016) ..... 8

*Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir. 2014) ..... 10

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013) ..... 9

*Lopez v. Am. Exp. Bank, FSB*, 2010 WL 2628659 (C.D. Cal. June 2, 2010) ..... 2, 5, 7

*McGrath v. Doordash, Inc.*, 2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) ..... 5

*McIntosh v. Adventist Health*, 2013 WL 968293 (N.D. Cal. Mar. 12, 2013) ..... 6

*Mikkilineni v. PayPal, Inc.*, 2021 WL 2763903 (Del. Super. Ct. Jul. 1, 2021) ..... 7

*Pick v. Discover Fin. Servs., Inc.*, 2001 WL 1180278 (D. Del. Sept. 28, 2001) ..... 6

*Ponkey v. Llr, Inc.*, 2021 WL 4595801 (C.D. Cal. Aug. 5, 2021) ..... 8

*Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220 (1987) ..... 6

*Tompkins v. 23andMe, Inc.*, 840 F.3d 1016 (9th Cir. 2016) ..... 9

*Trudeau v. Google*, 349 F. Supp. 3d 869 (N.D. Cal. 2018) ..... 10

*Webber v. Uber Techs., Inc.*, 2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) ..... 8, 9

*Wolff v. Tomahawk Mfg.*, 2022 WL 377926 (D. Ore. Feb. 8, 2022) ..... 2, 5

**Statutes**

9 U.S.C. § 2 ..... 5

9 U.S.C. § 3 ..... 10

Cal. Bus. & Prof. Code §17200 ..... 5, 10

Electronic Funds Transfer Act ..... 5, 10

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Federal Arbitration Act ........ *passim*

Racketeer Influenced and Corrupt Organizations Act ........ 5, 10

**Other Authorities**

Federal Rules of Civil Procedure
Rule 12 ........ 2, 5

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Lena Evans, Roni Shemtov, and Shabdan Akylbekov[1] (collectively, "Plaintiffs") filed this putative class action against PayPal, Inc. ("PayPal") in violation of their individual agreements to resolve all disputes with PayPal in binding arbitration. Plaintiffs admit to opening PayPal accounts whereby they expressly agreed to PayPal's User Agreement ("UA"). Indeed, in asserting a breach of contract claim based on the UA, Plaintiffs acknowledge that they each entered into an enforceable written agreement with PayPal. The UA contains a binding, comprehensive agreement to arbitrate all disputes between PayPal and the user on an individual basis. Plaintiffs' claims regarding PayPal's liquidated damages assessment for Plaintiffs' respective violations of PayPal's Acceptable Use Policy ("AUP") are rooted in the terms of the UA and subject to the mandatory arbitration provision.

This Court enforced the very arbitration agreement at issue only two months ago in *Cheng v. PayPal, Inc.*, a related case also arising out of PayPal's UA. 2022 WL 126305, *5 (N.D. Cal. Jan. 13, 2022) (Freeman, J.). The result should be no different here. To comply with the Federal Arbitration Act and the UA, and to further judicial consistency and economy, PayPal respectfully requests that the Court order arbitration of Plaintiffs' claims in their entirety.

## II. RELEVANT FACTUAL BACKGROUND

### A. PayPal's User Agreement

PayPal provides digital payment services that facilitate consumers' and merchants' ability to buy and sell goods and services, and send money securely worldwide. (Declaration of Michelle Squires ("Squires Dec.") ¶ 3; Dkt. 1 ¶¶ 28-29.) Plaintiffs allege they are PayPal users that have used PayPal for their respective business endeavors. (Dkt. 1 ¶¶ 23-25, 46-48, 52, 69-71.) To open a PayPal account, each Plaintiff had to complete PayPal's registration process. (Squires Dec. ¶ 4.) This process requires a user's affirmative acceptance of the UA, which provides the terms and conditions governing the use of PayPal's services. (*Id.*) PayPal requires

[1] The Complaint erroneously refers to Shabdan Akylbekov as Shbadan Akylbekov.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

users to accept the UA by checking a box affirming that they have "read and agree to" the UA and clicking a button on the online registration form to "Agree and Create Account." (*Id.* ¶ 5.) Before accepting the UA, potential users (including Plaintiffs) are given the opportunity to review the UA terms in full, either within a scroll box or via a hyperlink. (*Id.*) The UA is also available to users and the public through a "Legal" link that appears on every page of the PayPal.com website. (*Id.* ¶ 7.) A user cannot create an account without agreeing to the UA. (*Id.* ¶ 4.)

At all relevant times, the UA has provided that PayPal may amend the UA at any time by posting new terms as a "Policy Update" on PayPal's website. (*Id.* ¶ 9.) PayPal also sends e-mail notifications to its users in advance of certain anticipated changes to the User Agreement. (*Id.*) The UA further provides: "[b]y continuing to use our services after any changes to this user agreement, you agree to abide and be bound by those changes. If you do not agree with any changes to this user agreement, you may close your account." (*Id.*)

**B. The Agreement to Arbitrate**

The UA's Agreement to Arbitrate ("Agreement to Arbitrate") is referenced in conspicuous hyperlinked text within the introductory paragraphs of the UA on PayPal's website; the hyperlink, when clicked, takes a user directly to the standalone Agreement to Arbitrate section, which provides:

> You and PayPal each agree that any and all disputes or claims that have arisen or may arise between you and PayPal, including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non representative) basis. This Agreement to Arbitrate is intended to be broadly interpreted. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.

(*Id.* ¶ 13.)[2] The UA also includes a class action waiver whereby users agree to resolve disputes

---

[2] The quoted language is from the current version of the UA, effective December 10, 2021 and at the time of the Complaint's filing, unless otherwise noted. Versions of the UA in effect at the time Plaintiffs created their respective account(s) and at the time those accounts were limited are attached to the Squires Declaration. (Exs. 5-13, 15-17.)

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

by arbitration on an individual basis ("Class Waiver").[3]

The bilateral Agreement to Arbitrate further provides that any arbitration will be conducted by and in accordance with the American Arbitration Association in the county in which the user resides (or another mutually agreed location). (*Id.* Ex. 5 at 50.) It also contemplates that future amendments to the Agreement to Arbitrate will apply to all disputes that have arisen or may arise between the user and PayPal (other than claims filed before the amendment's effective date), consistent with the UA's more general provision about amending contract terms. (*Id.* ¶ 16.)

As of November 1, 2012, the Agreement to Arbitrate includes an opt out provision, distinct and set apart from other terms. (*Id.* ¶ 15.) Users who choose to opt out of the Agreement to Arbitrate can then elect to maintain their PayPal accounts or discontinue them. (*Id.* ¶ 12.) Plaintiffs were advised of and had the opportunity to opt out of the Agreement to Arbitrate, though none did. (*Id.* ¶ 23.)

**C. Restricted Activities**

Users agree not to use PayPal's payment platform for "Restricted Activities" as described in the UA. (*Id.* ¶ 24.) For instance, a user must not breach PayPal's AUP, which in turn prohibits, *inter alia*, activities that violate any laws; activities requiring pre-approval (such as gambling) without obtaining such approval; the sale of products infringing on intellectual property rights; and the sale of products presenting a risk to consumer safety. (*Id.* ¶ 26.) If a user engages in any Restricted Activities, PayPal may hold the balance in the user's PayPal account for up to 180 days. (*Id.* ¶ 27.) The UA further provides that sellers who breach the AUP will be

[3] The Class Waiver states: "You and PayPal agree that each of us may bring claims against the other only on an individual basis and not as a plaintiff or class member in any purported class or representative action or proceeding. Unless both you and PayPal agree otherwise, the arbitrator(s) may not consolidate or join more than one person's or party's claims and may not otherwise preside over any form of a consolidated, representative or class proceeding. Also, the arbitrator(s) may award relief (including monetary, injunctive and declaratory relief) only in favor of the individual party seeking relief and only to the extent necessary to provide relief necessitated by that party's individual claim(s). Any relief awarded cannot affect other PayPal customers." (*Id.* ¶ 14.)

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

liable to PayPal for liquidated damages based on a formula set forth in the UA, which provides a reasonable minimum estimate of PayPal's actual damages. (*Id.* ¶ 28.)

**D. Plaintiffs and This Lawsuit**

Plaintiff Evans alleges she has been a PayPal user since August 1999, though PayPal's records reflect that she opened her first PayPal account on September 11, 2001. (Dkt. 1 ¶¶ 23, 45; Squires Dec. ¶ 18.) She has since opened additional PayPal accounts using the same name, date of birth, and (at times) social security number, including in 2016, 2018, and 2020. (*Id.* ¶ 19.) Evans allegedly uses PayPal to "exchange money" for poker and in furtherance of her Poker League of Nations organization, even though PayPal's platform cannot be used for activities involving gambling without preapproval from PayPal. (Dkt. 1 ¶¶ 46-48; Squires Dec. ¶ 26.) She allegedly learned that PayPal limited her account(s) on November 22, 2020 and assessed liquidated damages on May 22, 2021 due to her violations of PayPal's AUP. (Dkt. 1 ¶ 49-50.)

Plaintiff Shemtov created a PayPal account on January 14, 2014 purportedly to sell yoga clothing. (Dkt. 1 ¶¶ 24, 52.) The AUP prohibits the use of PayPal for activities infringing on intellectual property rights. (Squires Dec. ¶ 26.) Shemtov alleges her account was limited in September 2017 and again in November 2019 for violating the AUP by selling counterfeit merchandise. (Dkt. 1 ¶¶ 56-57, 62-63.)

Plaintiff Akylbekov alleges he opened a PayPal account on May 16, 2016, though PayPal's records reflect his account was created on February 17, 2018. (Dkt. 1 ¶¶ 25; Squires Dec. ¶ 21.) In January 2020, he began using the PayPal account registered to his wife Aigerim Tobokelova's trucking company, Azyk Logistics, Inc. (account opened on August 20, 2019), to sell non-FDA approved biologic injectables. (Dkt. 1 ¶¶ 67-70; Squires Dec. ¶ 22.) Under the AUP, users may not use the platform to violate laws or for transactions presenting a risk to consumer safety. (Squires Dec. ¶ 26.) Akylbekov allegedly learned on March 4, 2020 that the account he had been using was limited for violations of the AUP. (Dkt. 1. ¶¶ 74-75.)

Notwithstanding the express language in the Agreement to Arbitrate and Class Waiver, Plaintiffs filed this putative class action in the Northern District of California on January 13, 2022. This action arises from Plaintiffs' respective breaches of the AUP and PayPal's subsequent

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

assessment of liquidated damages as set forth by the UA. (Dkt. 1 ¶¶ 2, 4, 7, 10-12.) The Complaint alleges the following causes of action: conversion, civil RICO violations, Electronic Funds Transfer Act ("EFTA") violations, breach of contract, breach of fiduciary duty, violations of Cal. Bus. & Prof. Code §17200, unjust enrichment, declaratory relief, and accounting (collectively, the "Claims"). Plaintiffs' Claims are covered by the UA's arbitration provisions.

## III. ARGUMENT

### A. The FAA Mandates Arbitration of Plaintiffs' Claims

The FAA governs arbitration agreements arising out of transactions involving interstate commerce and dictates that they "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Cheng*, 2022 WL 126305, at *5. The UA unequivocally involves interstate commerce, as Plaintiffs (residing in California and Illinois) utilized the online payment services of PayPal (a Delaware corporation) to exchange money with other users across the U.S. (Dkt. 1 ¶¶ 23-29; Squires Dec. ¶ 3); *see Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77 (1995) (FAA's "involving commerce" requirement extends to limits of Congress' Commerce Clause powers); *Cheng*, 2022 WL 126305, at *2-5 (FAA governed dispute arising out of UA). The UA also expressly provides that the "[FAA] governs the interpretation and enforcement of this Agreement to Arbitrate." (Squires Dec. ¶ 13); *see McGrath v. Doordash, Inc.*, 2020 WL 6526129, *5 (N.D. Cal. Nov. 5, 2020) (applying FAA where parties voluntarily elected it would govern).

Under the FAA, a party seeking to invoke an arbitration agreement may petition the court "'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Diamond Foods, Inc. v. Hottrix, LLC*, 2018 WL 3008562, *3 (N.D. Cal. 2012) (Freeman, J.) (quoting 9 U.S.C. § 4).[4] The court "engages in a limited two-part inquiry: first, it determines whether the arbitration agreement is valid, and second, it determines whether the

---

[4] As set forth in the Notice, PayPal's Motion to Compel Arbitration is brought pursuant to the FAA and not under Fed. R. Civ. P. Rule 12, so as to avoid acting inconsistently with the exercise of its right to arbitrate, i.e., by engaging in litigation on the merits. PayPal reserves the right to bring a Rule 12 motion if its Motion is not granted. *See Lopez*, 2010 WL 2628659, at *2 n.4; *Wolff*, 2022 WL 377926, at *5-7.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

agreement encompasses the claims at issue." *Davis v. CACH, LLC*, 2015 WL 913392, *2 (N.D. Cal. Mar. 2, 2015) (Freeman, J.); *see Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000); *Doe v. Massage Envy Franchising*, *LLC*, 2020 WL 7624620, *2 (Del. Super. Ct. Dec. 21, 2020). There is "no room for discretion," as the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Importantly, the party *resisting* arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). Because the Agreement to Arbitrate between Plaintiffs and PayPal is valid, enforceable, and covers the Claims, Plaintiffs cannot meet their burden.

**B. The Agreement to Arbitrate is Valid and Enforceable**

As an overarching principle, arbitration agreements governed by the FAA are presumed to be valid and enforceable. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-227 (1987); *McIntosh v. Adventist Health*, 2013 WL 968293, *2 (N.D. Cal. Mar. 12, 2013). The FAA also "allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions, including the law governing enforceability of a class-arbitration waiver." *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53-54 (2015). Consistent with this principle, the UA contains a Delaware choice-of-law provision, which governs the interpretation and validity of the UA. (Squires Dec. Ex. 5 at 56); *see Ebner v. Fin. Architects, Inc*., 763 F. Supp. 2d 697, 700 (D. Del. 2011) ("When an agreement contains both a choice-of-law clause and an arbitration clause, the […] court will apply the substantive law of the state named in the choice of law clause").

Notably, Delaware recognizes the validity of class waivers. *Pick v. Discover Fin. Servs., Inc*., 2001 WL 1180278, *5 (D. Del. Sept. 28, 2001) ("it is generally accepted that arbitration clauses are not unconscionable because they preclude class actions"); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (FAA preempts California law regarding class waivers because the latter "interfere[s] with fundamental attributes of arbitration and thus create[s] a scheme inconsistent with the FAA").

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1. The Agreement to Arbitrate Is Part of a Valid User Agreement

Delaware (like California) routinely enforces agreements of the kind at issue here, i.e., "online agreement[s] that require[] a 'webpage user [to] manifest assent to the terms of a contract by clicking an 'accept' button in order to proceed." *Massage Envy*, 2020 WL 7624620, at *2 (quoting *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, *1 (Del. Ch. Mar. 27, 2014)); *see Cheng*, 2022 WL 126305, at *3 (enforcing Agreement to Arbitrate under Delaware law).

Each Plaintiff opened at least one PayPal account at a time when the UA contained the Agreement to Arbitrate. (Squires Dec. ¶¶ 19-22; Dkt. 1 ¶¶ 67-69, 72.) Before doing so, each Plaintiff was presented with the agreement and required to affirmatively check a box indicating that they "read and agree[d] to the [UA]" and click a button labeled "Agree and Create Account."[5] (Squires Dec. ¶ 5.) Plaintiffs were afforded the opportunity to review the UA via a scroll box and/or hyperlink at the time of registration and affirmed they had reviewed the UA. (*Id*. ¶¶ 5-6.) The Agreement to Arbitrate and Class Waiver were also conspicuously set apart from other terms in the UA. (*Id*. ¶¶ 13-14.) The UA also preserved PayPal's right to amend its terms in the future. (*Id*. ¶ 16.) Plaintiffs were "on notice that [they were] modifying [their] legal rights" and manifested their assent by checking a box and clicking a button. *Cheng*, 2022 WL 126305, at *4 (quoting *Newell Rubbermaid*, 2014 WL 1266827, at *1).

Each Plaintiff also had the right and opportunity to—but did not—opt out of the Agreement to Arbitrate. (Squires Dec. ¶ 23); *see Mikkilineni v. PayPal, Inc*., 2021 WL 2763903, *11 (Del. Super. Ct. Jul. 1, 2021) (compelling arbitration where plaintiff could have opted out); *Andre v. Dollar Tree Stores, Inc*., 2019 WL 2617253, *10 (D. Del. June 26, 2019) (opt out procedure supported validity of arbitration agreement).

Only two months ago and under similar circumstances, this Court found the Agreement to Arbitrate at issue here to be valid. *See Cheng*, 2022 WL 126305, *3 ("The Court agrees with PayPal that the arbitration agreement is valid and enforceable."). The related *Cheng* case

[5] To the extent the method of accepting the UA was slightly different at the time Evans opened her initial account in 2001, she was still required to manifest her consent to its terms by checking a box. (Squires Dec. ¶ 5.) She has since opened *multiple* other PayPal accounts, including in 2016, 2018, and 2020, reaffirming that she agrees to, and remains bound by, the UA. (*Id*. ¶ 19.)

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

(brought by a member of *Evans*' purported putative class) involved alleged violations of the same UA provisions and the same threshold question as to the Agreement to Arbitrate's enforceability. Upholding the Agreement to Arbitrate in this case is wholly consistent with the Court's prior decision and avoids potentially conflicting rulings. *See Ponkey v. Llr, Inc*., 2021 WL 4595801, *4 (C.D. Cal. Aug. 5, 2021) ("Because this case involves the same arbitration provision as in [a related case], the Court finds no reason to depart from the holding in [the related case] that a valid arbitration agreement exists between the parties here.").

2. That PayPal Updated Its Terms Does Not Alter the Enforceability of the Agreement to Arbitrate and Class Waiver

The enforceability of the Agreement to Arbitrate and Class Waiver is not invalidated simply because each Plaintiff accepted the UA at varying times. It is well settled that individuals, and certainly business owners, will be bound to arbitration agreements of which they are notified, even if the operative agreement did not appear among the original terms. *See Webber v. Uber Techs., Inc.*, 2018 WL 10151934, *4 (C.D. Cal. Sept. 5, 2018) (plaintiffs received email notice that continued use of service would constitute assent and were thus bound by arbitration provision added to terms after initial agreement); *In re Facebook Biometric Info. Privacy Litig*., 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (updated terms enforceable where "plaintiffs accepted and agreed to the current terms by continuing to use Facebook after receiving" email notice of change); *James v. Comcast Corp*., 2016 WL 4269898, *2 (N.D. Cal. Aug. 15, 2016) (continued use of service, failure to opt out after receiving notice of updated terms including arbitration provision demonstrated acceptance thereof); *Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1257-58 (Del. 2001) (bank could unilaterally add arbitration clause after notifying cardholder of same and providing opportunity to opt out).

At all relevant times, the UA has included a change of terms provision permitting PayPal to update terms in the future and providing that a user's continued use of the platform constitutes acceptance of amended terms. (Squires Dec. ¶ 9.) PayPal exercised its right to amend the UA in 2012 to update the Agreement to Arbitrate. (*Id*. ¶ 10.) PayPal posted a Policy Update with information about and the full text of the Agreement to Arbitrate on its website one month before its effective date. (*Id.* ¶ 10 & Ex. 2 at 4.) PayPal also emailed notice of the Policy Update

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

detailing the Agreement to Arbitrate and Class Waiver, including the opt out provision, in bold and/or underline font to all active PayPal users—including Plaintiff Evans—in October 2012. (*Id.* ¶ 11 & Ex. 3). After being put on notice of the Agreement to Arbitrate in 2012, Plaintiff Evans continued using her 2001 account and opened other accounts thereafter. (Squires Dec. ¶¶ 18-19); *see Webber*, 2018 WL 10151934 at *4.

With respect to a user's acceptance of arbitration terms adopted after the initial agreement, *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.* is particularly instructive, as it involves the enforcement of the instant Agreement to Arbitrate in a scenario almost identical to this one. 2018 WL 2933608, *6 (N.D. Ill. June 12, 2018). In that case, the Northern District of Illinois compelled arbitration where the PayPal user had registered her account and accepted the UA before PayPal's 2012 version of the Agreement to Arbitrate went into effect. *Id.* at *5-6. That user, like Plaintiff Evans, had received sufficient notice of the Policy Update (including via email) and was given the opportunity to opt out, but did not do so. *Id.* at *6.

As for Plaintiffs Shemtov and Akylbekov, they opened their accounts in 2014 and 2018, respectively—well after PayPal adopted the 2012 version of the Agreement to Arbitrate. (Dkt. 1 ¶¶ 52, 67.) Both actively used PayPal thereafter, and were timely notified of any changes to the UA. (Squires Dec. ¶¶ 20-23.) Their continued use similarly constitutes assent to the updated terms. Accordingly, the Agreement to Arbitrate and Class Waiver are equally enforceable against all Plaintiffs, requiring individual arbitration of each Plaintiff's Claims.

### C. The Broad Scope of the Agreement to Arbitrate Encompasses this Dispute

Under the FAA, the scope of an arbitration agreement is governed by federal substantive law. *Kramer v. Toyota Motor Corp*., 705 F.3d 1122, 1126 (9th Cir. 2013). And "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc*., 840 F.3d 1016, 1022 (9th Cir. 2016).

Both the U.S. Supreme Court and the Northern District of California upheld arbitration provisions containing expansive language. *See, e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (upholding provision requiring arbitration of "all disputes between the parties"); *Cheng*, 2022 WL 126305, at *4-5 (allegations about AUP violations and liquidated damages

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

within scope of Agreement to Arbitrate); *Trudeau v. Google*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018) (Freeman, J.) (enforcing clause requiring arbitration of all disputes between parties, including claims accruing before new arbitration terms were added to terms of service).

The Agreement to Arbitrate states that "any and all disputes or claims that have arisen or may arise between" each Plaintiff "and PayPal, including […] statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding [individual] arbitration, rather than in court." (Squires Dec. Ex. 5 at 48.) Moreover, it explicitly provides that "it is intended to be broadly interpreted," and allows for equitable (including declaratory) relief. (*Id.*) The Agreement to Arbitrate is not tethered to disputes arising out of a particular account or transaction, but encompasses all claims stemming from the relationship between the user and PayPal.

The instant lawsuit is a dispute between PayPal and each Plaintiff as a result of the latter's use of PayPal's services. (Dkt. 1 ¶¶ 45-50, 52-63, 67-84.) The Claims are statutory, i.e., violations of civil RICO, EFTA, and Cal. Bus & Prof. Code section 17200, as well as based in contract and tort, i.e., conversion, breach of contract, breach of fiduciary duty, unjust enrichment, and accounting. (*Id.*, Causes of Action 1-9.) Each cause of action is premised upon the foundational allegation that PayPal violated the UA by assessing liquidated damages against Plaintiffs' respective accounts after determining that each Plaintiff breached the AUP, including via unauthorized activities involving gambling (Evans), the sale of counterfeit clothing (Shemtov), or the sale of unapproved injectable drugs (Akylbekov). (*Id.* ¶¶ 45-50, 52-63, 67-84.) Plaintiffs' Claims thus fall squarely within the scope of the Agreement to Arbitrate.

**D. The Entire Action Should Be Stayed, If Not Dismissed**

The FAA empowers this Court to stay proceedings pending arbitration. 9 U.S.C. § 3. This Court may also "dismiss [the action] outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). If the Court orders arbitration as to any or all Plaintiffs, it should dismiss, or at least stay, all proceedings in this litigation.

//

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

## IV. **CONCLUSION**

PayPal respectfully requests that the Court issue an order compelling the individual arbitration of Plaintiffs' Claims in accordance with the parties' agreement.

Dated: March 16, 2022

DENTONS US LLP

By: _____*/s/Laura L. Geist*_________
Laura L. Geist
Attorneys for Defendant
PayPal, Inc.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300