THE BENSAMOCHAN LAW FIRM INC.
Eric Bensamochan, Esq. SBN 255482
Deborah C. Silver, Esq. SBN 128495
9025 Wilshire Blvd Suite 215
Beverly Hills, CA. 90211
Telephone: (818) 961-0138; Facsimile: (818) 230-1931
Email: eric@eblawfirm.us
Email: deborah@eblawfirm.us

SCHREIBER & SCHREIBER, INC.
Eric A. Schreiber, Esq. SBN 194851
Ean M. Schreiber, Esq. SBN 284361
16633 Ventura Blvd Suite 1245
Encino, CA. 91436
Telephone: (818) 789-2577: Facsimile: (818) 789-3391
Email: eric@schreiberlawfirm.com
Email: ean@schreiberlawfirm.com

Attorney for Plaintiffs Lena Evans, Roni Shemtov, and Shbadan Akylbekov

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| LENA EVANS, RONI SHEMTOV, and SHBADAN AKYLBEKOV, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PAYPAL, INC., a Delaware corporation; and DOES 1-25, inclusive,<br><br>Defendants. | Case No.: 5:22-cv-00248-BLF<br><br>**OPPOSITION TO THE MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS IN SUPPORT THEREOF**<br><br>[PayPal User Declarations and [Proposed] Oder filed concurrently herewith]<br><br>Date: May 26, 2022<br>Time: 9:00a.<br>Courtroom No. 3<br>Judge: Hon. Beth Labson Freeman<br><br>Date Action Filed: January 13, 2022<br>Trial Date: None Set |

OPPOSITION TO MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................. **II**

**I.**   **INTRODUCTION** ................................................................................**1**

**II.**   **BACKGROUND FACTS AND NATURE OF CLAIMS** ..........................................**2**

**III.**   **LEGAL ARGUMENT** ................................................................................**3**

   **A.   The Motion Has Not Provided Evidence That Plaintiffs Entered into An Arbitration Agreement**............ ........................................................................................... **3**

   **B.   This Court May Decide Arbitrability**................................................................ **4**

   **C.   Plaintiff may assert state law contract defenses to the arbitration clause.** ............................. **6**

   **D.   The Arbitration Clause is Unenforceable based on Unconscionability.** ................................ **13**

       1.   Procedural Unconscionability ................................................................ 14

       2.   Substantive Unconscionability and Forum Selection................................... 14

       3.   PayPal's Seizure of Funds Shocks the Conscience. ................................... 15

       4.   The Arbitration Clause Contains an Anti-Class Action Provision Which Violates California's Public Policy. .................................................................... 17

       5.   The Arbitration fees can also greatly exceed the cost of litigation. ................. 18

       6.   Other Violations Which Also Render the Agreements Unconscionable......................... 19

   **E.   The Entire TOS Agreement With all Members of the Public is Illusory, Thus Rendering the Entire Agreement (Including the Arbitration Clause) Void.** ............................................. **20**

   **F.   The Liquidated Damages Provision is Void as An Unlawful Penalty Further Evidencing the Unconscionability And Illusory Nature of The UA**............................................. **25**

**IV.**   **CONCLUSION** ................................................................................**26**

# TABLE OF AUTHORITIES

**Cases**

*America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 12, 108 Cal. Rptr. 2d 699 (2001)....9

*American Express Co v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013) ...............................22

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 Cal. Rptr. 2d 745, 6 P.3d 669, 697, 775 (Cal. 2000) ........................................................................................................7

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ...6

*Blair v. Rent-A-Center*, Inc., 928 F.3d 819 (9th Cir. 2019) .........................................................20

*Blake v. Ecker*, 93 Cal. App. 4th 728, 741, 113 Cal. Rptr. 2d 422 (2001) ...........................15, 29

*Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844, (6th Cir., 2020) .....................4

*Bleecher v. Conte*, 29 Cal.3d 345, 350 (1981),.............................................................................24

*Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909-10, 104 Cal. Rptr. 2d 888 (2001) .............17

*Brazil v. Dell, Inc.*, 2007 U.S. Dist. LEXIS 59095, *10 (N.D. Cal., 2007).................................11

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010) ..4

*Cason v. Glass Bottle Blowers Assn., Supra*, 37 Cal.2d 134, 143—144, 231 P.2d 6.)................27

*Change Capital Partners Fund I, LLC v. Volt Elec. Sys., LLC*, 2018 Del. Super. LEXIS 157, at *4 (2018) .......................................................................................................................................9

*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir., 2013).........................................7

*Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165, 1175-1176, 2002 U.S. Dist. LEXIS 16364 (N.D. Calif., 2002) .............................................................................................................................17

*Danley v. Encore Capital Grp., Inc.*, 680 Fed. Appx. 394, 399, 2017 U.S. App. LEXIS 3388, (6th Cir., 2017)..............................................................................................................................5

*Falcone v. Middlesex County Medical Society* (1961) 34 N.J. 582, 170 A.2d 791 .....................26

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ................................................................................................................................... 5

*Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853, 113 Cal. Rptr. 2d 376 (2001) ........................................................................................................................................... 15

*Hall v. Superior Court*, 150 Cal. App. 3d 411, 416, 197 Cal. Rptr. 757 (1983) .......................... 13

*James v. Marinship Corp.* (1944) 25 Cal.2d 721, 155 P.2d 329 ................................................ 26

*M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) 17

*McArdle v. AT&T Mobility LLC*, 772 Fed.Appx. 575 (9th Cir. 2019) ......................................... 20

*McGill v. Citibank*, N.A., 2 Cal.5th 945 (2017) ....................................................................... 19

*Mercuro v. Superior Cour*t, 96 Cal. App. 4th 167, 176, 116 Cal. Rptr. 2d 671 (2002) ............... 16

*Merkin v. Vonage Am., Inc*., 639 Fed. Appx. 481, 2016 U.S. App. LEXIS 8188 (9th Cir., 2016). 4

*Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 468, 11 Cal. Rptr. 2d 330, 834 P.2d 1148 (1992) ................................................................................................................................... 14

*Otto v. Tailors' P. & B. Union*, Supra, 75 Cal. 308, 314—315, 17 P. 217 .................................. 27

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) ..................................................................................................................................... 4

*Rosenthal v. Great W. Fin. Securities Corp.*, 14 Cal.4th 394, 413, 926 P.2d 1061, 58 Cal. Rptr. 2d 875 (1996) .......................................................................................................................... 3

*Steiner v. Thexton*, 48 Cal. App.4th 411, 418 (2010) ............................................................... 24

*Steven v. Fidelity & Casualty Co.*, 58 Cal.2d 862, 882, 27 Cal.Rptr. 172, 377 P.2d 284, 297 (1962) ................................................................................................................................... 16

*Swital v. Real Estate Commissioner, Supra*, 116 Cal.App.2d 677, 679, 254 P.2d 587, 588 ........ 27

*Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*, 2021 Del. Super. LEXIS 182, *17-18 (2021) ................................................................................................................ 12

*Ticknor*, 265 F.3d at 940-41 ........................................................................................... 16

*Tillage v. Comcast Corp.*, 772 Fed.Appx. 569 (9th Cir. 2019) ..................................... 20

*Von Arx v. San Francisco Gruetli Verein, Supra, 113 Cal. 377, 45 P. 685;* ................ 27

*Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 917, 15 P.3d 1071, 103 Cal. Rptr. 2d 320 ............................................................................................................ 14

*Zaborowski v. MHN Gov't Servs., Inc.*, 601 F. App'x 461, 464-465 (9th Cir. 2014) ..... 7

**Statutes**

Del. Ch. Ct. R. 6, § 2-302 ............................................................................................... 11

Federal Arbitration Act .................................................................................................... 17

**TO THE HONORABLE BETH LABSON FREEMAN, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Plaintiffs, Lena Evans, Roni Shemtov, and Shbadan Akylbekov, individually and on behalf of all others similarly situated ("Plaintiffs" herein) hereby oppose Defendant PayPal, Inc.'s (hereinafter "PayPal" or "Defendant") Motion to Compel Arbitration as follows:

## I.   INTRODUCTION

PayPal has filed a motion to compel this putative class action case to arbitration based on a "click wrap" agreement between PayPal and its customers. The issue of click wrap agreements is a legal frontier of the digital domain ripe for precedent. Giant Silicon Valley companies use them to set terms and conditions for billions of users based on a click of the mouse. They are contracts of adhesion on a staggering scale. Companies with unequal bargaining power, offering users take it or leave it agreements, in spaces where there are no meaningful alternatives.

These companies pervade the common vernacular. People "Uber it" to bars and clubs, they "Instagram" important (and trivial) life events, they Door Dash dinner, Airbnb a place to stay, and Google just about everything. All of these activities are governed by click wrap agreements. They are part of our everyday lives.

PayPal is an international financial institution but unlike banks it gets to govern it users through a click wrap agreement rather than be subject to banking regulations. This click wrap agreement contains a binding arbitration provision as well as a class action waiver. The combination of these two provisions essentially allows PayPal to seize funds from users' accounts in amounts too small to litigate individually and then prohibits the consolidation of those claims into a class action. These provisions are unconscionable, and this Court should not ratify this conduct by granting PayPal's motion to compel arbitration.

///

## II.   BACKGROUND FACTS AND NATURE OF CLAIMS

Plaintiffs, in addition to their own declarations, have attached hereto numerous declarations of putative class members. These declarations are but a small sample of the thousands of consumers that have already spoken with and/or approached Plaintiffs' counsel, all of whom tell a similar tale.

1.     Consumers receive an email from PayPal informing them that they have violated PayPal's User Agreement ("UA") and/or PayPal's Acceptable Use Policy ("AUP"), and that their accounts, and all monies therein are frozen while the account is under investigation;

2.     In virtually every instance, PayPal refuses to tell customers what the violation is, often telling consumers they have to "get a subpoena" in order to even know the nature of why their account has been frozen;

3.     While an account is under investigation, consumers are not given the right to dispute any claims or provide documents or evidence to counter the claim.

4.     Under its UA, PayPal has the right to suspend an account for up to six (6) months.

5.     At the end of the six (6) month freeze, PayPal sends the consumer an email informing them that they have violated the UA and/or AUP and that **all of the money** in the user's PayPal account has been taken by PayPal for itself as "liquidated damages."

6.     The UA contains a liquidated damages provision which permits PayPal to pay itself $2,500 **per violation** as liquidated damages from the user's funds held (and frozen) in his or her PayPal account.

7.     The amounts taken have ranged from a few hundred dollars in some instances to several hundred thousand dollars in others but always seems to equate the account's total balance.

8.     The results of PayPal investigations are never disclosed showing whether there

was a proven violation or not, and even if only some of the transactions were even conceivably

violations of the AUP.

9.      After draining the user's account in full, PayPal then closes/terminates the user's

account.  To add insult to injury, PayPal then often follows up by sending the user a tax form

indicating that the user owes income tax on all the funds PayPal has seized.

## III.    LEGAL ARGUMENT

PayPal's Motion to Compel Arbitration (the "Motion" herein) should be denied because

the motion fails to meet its burden and because the underlying arbitration agreement is

unenforceable.

### A.  <u>The Motion Has Not Provided Evidence That Plaintiffs Entered into An Arbitration Agreement</u>.

The Motion at Page 1, Section A makes a conclusory statement without proof that the

Plaintiffs herein agreed to arbitrate. The Motion claims that by virtue of creating a PayPal

account Plaintiffs must have clicked a box affirming that they read and agree to the UA.

Although an electronic record constitutes sufficient evidence that the parties have entered into a

binding agreement, the applicable statutes require production of a record that the parties have

entered into an agreement and evidence of the terms and conditions contained in such agreement.

"Because the existence of the agreement is a statutory prerequisite to granting the petition, the

petitioner bears the burden of proving its existence by a preponderance of the evidence."

*Rosenthal v. Great W. Fin. Securities Corp.*, 14 Cal.4th 394, 413, 926 P.2d 1061, 58 Cal. Rptr.

2d 875 (1996). Since the Motion does not provide a record that Plaintiffs, Lena Evans, Roni

Shemtov, and Shbadan Akylbekov entered into the arbitration agreement the motion must be

denied. To carry this burden, PayPal should have produced a record for each of the Plaintiffs

showing that they personally executed the agreement. The Motion contains no such exhibit.

B. **This Court May Decide Arbitrability**.

It is appropriate for this Court to determine the enforceability of the arbitration clause and the class action waiver provision. "[W]hen a plaintiff argues that an arbitration clause, standing alone, is unenforceable . . . that is a question to be decided by the court." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp*., 622 F.3d 996, 1000 (9th Cir. 2010). Plaintiffs' challenge was clearly directed at the arbitration provision." *Merkin v. Vonage Am., Inc*., 639 Fed. Appx. 481, 2016 U.S. App. LEXIS 8188 (9th Cir., 2016).

While the FAA allows parties to agree that an arbitrator, rather than a court, will determine gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy [*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)], such an agreement, commonly known as a delegation clause, requires *clear and unmistakable evidence* that the parties agreed to have an arbitrator decide arbitrability. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844, (6th Cir., 2020) [quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)]. See also *Rent-A-Center*, supra, 561 U.S. at 69, footnote1.

Only a specific challenge to a delegation clause brings arbitrability issues back within the court's province. *Rent-A-Center*, supra, 561 U.S. at 72 (unless a party challenges the delegation provision specifically the court must leave any challenge to the validity of the Agreement as a whole for the arbitrator).

A party seeking to avoid the effects of a delegation clause should raise a challenge at least in its opposition to a motion to compel arbitration. *Id*. If a party fails to acknowledge their delegation provision, let alone challenge it, they forfeit any such challenge. *Danley v. Encore Capital Grp., Inc*., 680 Fed. Appx. 394, 399, 2017 U.S. App. LEXIS 3388, (6th Cir., 2017).

Class claimants hereby challenge the enforceability of any provisions which purport to be

a delegation clause wherever those provisions may be found. There is no evidence, let alone clear and unmistakable evidence, that the parties agreed to have an arbitrator decide arbitrability.

The top of page 5 of PayPal's user agreement states what may possibly constitute a delegation clause:

> "All determinations as to the scope, interpretation, enforceability, and validity of this Agreement shall be made final exclusively by the arbitrator, which award shall be binding and final Judgment on the arbitration award may be entered in any court having jurisdiction."

Class claimants never realized that this convoluted clause meant that they were giving up their right to have a Court determine the arbitrability of their disputes with PayPal. Hence, Class Claimants never agreed to have an arbitrator determine arbitrability rather than this Court.

Furthermore, this clause is just as unconscionable as the rest of the user agreement. This Court must determine whether an enforceable contract even exists. PayPal's ability to invoke the arbitration clause of the user agreement constitutes an issue of enforceability which this Court should, in the interest of justice, determine.

Section 14.3(d) Agreement to Arbitrate, states, in relevant part:

> "d. Severability.
>
> . . . If a court decides that any of the provisions in subsection (a) of this Agreement to Arbitrate ("Prohibition of Class and Representative Actions and Non-Individualized Relief") is invalid or unenforceable, then the entirety of this Agreement to Arbitrate shall be null and void. The remainder of the User Agreement, including all other provisions of Section 14 (Disputes with PayPal), will continue to apply."

Because Section 14.3(d) states, "if a court decides," the user agreement acknowledges that the court, and not an arbitrator, has authority to determine whether any provisions of the agreement to arbitrate are invalid and unenforceable. Hence, any purported delegation clause is unenforceable because of the contradictory language in this provision.

C. **Plaintiff may assert state law contract defenses to the arbitration clause**.

In this case, both the language of the arbitration clause itself as well as the law found in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ("*Concepcion*"), permit the court to determine substantive defenses under state law.

"[W]hile *Concepcion* outlaws discrimination in state policy that is unfavorable to arbitration, it leaves intact state-law defenses that are agnostic towards arbitration." *Chavarria v. Ralphs Grocery Co*., 733 F.3d 916, 927 (9th Cir., 2013). "The application of California's unconscionability doctrine in this case is not unfavorable towards arbitration, but instead reflects a generally applicable policy against abuses of bargaining power." *Id*.

The Federal Arbitration Act ("FAA") does not preempt the invalidation of an arbitration clause or a class action waiver provision, where the application of same is unconscionable.

Under California law, a court may refuse to enforce an arbitration agreement that is "permeated" by unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 99 Cal. Rptr. 2d 745, 6 P.3d 669, 697, 775 (Cal. 2000) ("given the multiple unlawful provisions, the trial court did not abuse its discretion in concluding that the arbitration agreement is permeated by an unlawful purpose").

The Supreme Court of California in *Armedariz*, supra, 6 P.3d at 696-697, held:

> "In this case, two factors weigh against severance of the unlawful provisions. First, the arbitration agreement contains more than one unlawful provision; it has both an unlawful damages provision and an unconscionably unilateral arbitration clause. Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage."

See *Zaborowski v. MHN Gov't Servs., Inc*., 601 F. App'x 461, 464-465 (9th Cir. 2014) (Gould, J., concurring in part and dissenting in part) ("*Concepcion* and its progeny should create a presumption in favor of severance when an arbitration agreement contains a relatively small number of unconscionable provisions that can be meaningfully severed").

In the instant case, there are too many unconscionable provisions to make severance a viable option.

While the U.S. Supreme Court in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011), held that California's so-called *Discover Bank* rule is pre-empted by the FAA, as stated by the dissent, state law defenses such as unconscionability can still be raised.

Hence, where warranted, as it is under the facts of the instant case, the arbitration clause and class action wavier provisions can be stricken on this basis.

Under California law, a right or cause of action created for a public purpose cannot, by private agreement, be waived, contravened, burdened, or subjected to procedural shortcomings that would preclude its vindication.

California courts refuse to enforce arbitration provisions on public policy grounds if they impede the enforcement of unwaivable statutory rights. See *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 506-507, 30 Cal. Rptr. 3d 787, 115 P.3d 68 (2005) (stating that employees subject to mandatory arbitration agreements must be ensured certain minimum standards of fairness to "vindicate their public rights in an arbitral forum").

Class claimants, and thousands of other PayPal users, whose funds were taken by PayPal without due process of law, have public rights under the United States Constitution. The user agreement as written deprives PayPal users of rights to address their grievances before PayPal seizes their funds, without notice, and without even an explanation as to the reason.

California Civil Code Section 1668 makes unlawful those contracts that would exempt a party from violations of law. See *Armendariz*, supra, 24 Cal. 4th at 100 (explaining that this rule derives from California Civil Code section 3513, which prohibits the contractual waiver of legal rights established for a public purpose, and section 1668, which makes unlawful those contracts

1   that would exempt a party from violations of law).

2       Following this principle, California courts have stricken arbitration provisions that would

3   prevent the enforcement and vindication of public rights by imposing unreasonable fees on a

4   party [*Armendariz*, supra, 24 Cal. 4th at 110-111], or by requiring arbitration in a distant and

5   inconvenient forum [*America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 12, 108 Cal.

6   Rptr. 2d 699 (2001)].

7       "Our law favors forum selection agreements only so long as they are procured freely and

8   voluntarily, with the place chosen having some logical nexus to one of the parties or the dispute,

9   and so long as California consumers will not find their substantial legal rights significantly

10  impaired by their enforcement." *America Online*, supra, *12.

11      The same protections should be afforded the California class claimants if the Delaware

12  choice of law provision is found to deprive them of substantial legal rights afforded them under

13  California law.

14      With very limited exceptions, Delaware courts enforce contractual choice of

15  law clauses as long as the jurisdiction chosen has a "substantial relationship to the parties or the

16  transaction" and the choice is not unenforceable under the fundamental public policy of a

17  "default and materially-more interested state." *Change Capital Partners Fund I, LLC v. Volt*

18  *Elec. Sys., LLC*, 2018 Del. Super. LEXIS 157, at *4 (2018); Restatement §§ 187(2)(a)-(b).

19      "Delaware [c]ourts will honor a contractually-designed choice of law provision so long as

20  the jurisdiction selected bears some material relationship to the transaction." *Change Capital*

21  *Partners*, supra, *13.

22      Other than PayPal being a Delaware corporation, Delaware has no relationship with the

23  transactions at issue in this case. PayPal's legal team is based in California. Two Class Claimants

24  reside in California. PayPal users' interests in being protected by California law where an out-of-

1  state company is stealing customer funds is a greater nexus and public policy concern than

2  enforcing a Delaware choice of law provision, where Delaware has no connection with the issues

3  at stake in this case.

4  Where the choice of law is not reasonable or is unenforceable, under the fundamental

5  public policy of a "default" and materially more interested state, the contractual choice of law

6  clause is not enforceable. Delaware law does not control where the choice of law clause

7  is unenforceable because of a public policy in a state with an interest materially greater than

8  Delaware's.

9  If the Delaware choice of law clause conflicts with the public policy interest of California

10  in protecting its residents from theft by large corporations such as PayPal, that choice of law

11  clause should not be enforced by the forum.

12  The class action waiver compels a procedure for resolving claims that eviscerates the

13  right to participate in a class action.

14  That is against public policy in California, as PayPal's illegal actions could continue

15  unchallenged.

16  Class claimants would then lack an effective means and ability to redress their harms.

17  California case law demonstrates a public policy which is designed to protect a person

18  against the oppressive use of superior bargaining power by a large corporation such as PayPal,

19  which dominates the payment mechanism platform. Indeed, many websites and landlords even

20  only allow PayPal as a means of effectuating payment.

21  Corporations should not be permitted to use class action waivers to exculpate themselves

22  from liability. Class actions were designed not only to compensate victimized group members,

23  but also to deter violations of the law.

24  Permitting PayPal to prohibit class actions against it through its contracts with its users

1   would be counter to California public policy because it would undermine the public interest in

2   deterring wrongdoing.

3       The loss of an individual consumer's right to bring a class action negatively affects the

4   rights of those unnamed class members on whose behalf the class action would proceed.

5       In this sense, the right to participate in a class action is a public -- not merely a private --

6   right: it protects the rights of consumers as a whole.

7       Whether a class action waiver provision will be considered unconscionable in California

8   "is a fact-specific, case-by-case inquiry." *Brazil v. Dell, Inc*., 2007 U.S. Dist. LEXIS 59095, *10

9   (N.D. Cal., 2007),  (citing *Discover Bank, Cohen* and *Douglas)*. The Court in *Brazil v. Dell*,

10  supra, decided <u>not</u> to uphold and enforce a Delaware choice of law clause in arbitration

11  provisions.

12       The Delaware choice-of-law provision is invalid because applying Delaware law would

13  conflict with California's fundamental policy of protecting consumers from the oppressive use of

14  superior bargaining strength and the large-scale theft of PayPal user funds alleged in the Class

15  Action Complaint.

16      PayPal carried out a scheme to deliberately cheat large numbers of its users.

17      The user agreement was presented on a take it or leave it basis despite the opt out

18  provision which the vast majority of PayPal users never noticed.

19      The sole reason PayPal included an opt out provision was so the Court will not find its

20  user agreement to be procedurally unconscionable.

21      The sole reason PayPal selected Delaware instead of California as its choice of law is to

22  deprive its users of the favorable consumer protection which exists under California law.

23      Under Delaware law, when contracting parties identify a state's laws to govern the

24  contract, a party seeking to invalidate that choice bears the burden of showing why a different

OPPOSITION TO MOTION TO COMPEL ARBITRATION
- 10 -

1  state's laws should apply. In doing so, that party must establish three elements: (1) the different

2  state would be the default state but for the choice of law provision; (2) enforcement of the

3  agreement would be contrary to a fundamental public policy of that different state; and (3) that

4  different state has a materially greater interest than Delaware in the enforcement or non-

5  enforcement of the agreement. *Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*, 2021

6  Del. Super. LEXIS 182, *17-18 (2021).

7      California has a materially greater interest than Delaware in the non-enforcement of an

8  agreement which, if enforced, will materially deprive two named Class Claimants of a

9  reasonable remedy, class action, to recover the funds which PayPal stole from their user

10  accounts. California would be the default state but for the Delaware choice of law provision.

11     There is no nexus with Delaware other than PayPal being chartered there. The businesses

12  of two named Class Claimants, selling things or running a poker league as a non-profit to help

13  women, are managed and run in California.

14     Delaware may not rule any differently as to finding the user agreement and the

15  arbitration/class action waiver clauses to be unconscionable contracts of adhesion which PayPal

16  uses as a sword and shield to steal funds from its user accounts.

17     Both Delaware and California should frown on such corporate misconduct which injured

18  their residents.

19     A contract of adhesion may be declared unenforceable, in whole or in part, if its terms are

20  unconscionable within the meaning of Del. Ch. Ct. R. 6, § 2-302.

21     Under 6 Del. C. § 2-302:

22     "If the court as a matter of law finds the contract or any clause of the contract to have been
       unconscionable at the time it was made the court may refuse to enforce the contract, or it

23     may enforce the remainder of the contract without the unconscionable clause, or it may so
       limit the application of any unconscionable clause as to avoid any unconscionable result.

24     6 Del. C. § 2-302(1)."

Section 2-302 permits a court to strike unconscionable clauses. Enforcement of the Delaware choice of clause would result in a significant diminution of rights to California consumers. The question of the enforceability of the forum-selection clause is "inextricably bound up" in the question of the validity of the choice-of-law provision. *America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 13, 108 Cal. Rptr. 2d 699 (2001); *Hall v. Superior Court*, 150 Cal. App. 3d 411, 416, 197 Cal. Rptr. 757 (1983). "The reason for considering them together," the *America Online* court wrote, "was that absent a choice of law clause, the selected forum could apply California law to the dispute under the selected forum's conflict of laws principles. If so, there would be no risk that substantive law might be employed which would materially diminish rights of California residents in violation of California public policy." *America Online*, supra, 90 Cal. App. 4th at 13.

The California Supreme Court set forth the burden of proof in a choice-of-law question in its decision in *Washington Mutual*, as follows:

> "[I]f the proponent of the [choice-of-law] clause . . . demonstrates that the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law, the parties' choice generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue."

*Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 917, 15 P.3d 1071, 103 Cal. Rptr. 2d 320, citing *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 468, 11 Cal. Rptr. 2d 330, 834 P.2d 1148 (1992).

Under this standard, the burden in the present case is on PayPal to show either that Delaware has a substantial relationship to the parties or that a reasonable basis exists for the choice of Delaware law.

Class claimants do not concede that a reasonable basis exists for the choice of Delaware law. PayPal users reside in California and in many other states, and in other countries.

OPPOSITION TO MOTION TO COMPEL ARBITRATION

- 12 -

1    Other than PayPal being incorporated in Delaware, there is no connection between

2    Delaware and PayPal's scheme to defraud its users by stealing user funds by falsely claiming the

3    users violated its acceptable use policies ("AUP").

4    The burden does not shift to the Class Claimants to establish both that Delaware law is

5    contrary to a fundamental policy of California and that California has a materially greater interest

6    in the determination of the issue, because PayPal selected Delaware as its choice of law for the

7    sole purpose of avoiding California consumer protection law protecting its citizens from the very

8    misconduct which occurred in the instant case. There is no reasonable basis existing for the

9    choice of Delaware law.

10    Delaware law, if permitting class action waivers, conflicts with fundamental California

11    public policy.

12    **D.  The Arbitration Clause is Unenforceable based on Unconscionability.**

13    Unconscionability is a defense applicable to contracts generally and thus may be raised in

14    defense to an arbitration provision. *Blake v. Ecker*, 93 Cal. App. 4th 728, 741, 113 Cal. Rptr. 2d

15    422 (2001). Unconscionability has both procedural and substantive components. *Id.* at 742. The

16    procedural component is satisfied by the existence of unequal bargaining positions and hidden

17    terms common in the context of adhesion contracts. *Id*. The substantive component is satisfied by

18    overly harsh or one-sided results that "shock the conscience." *Id*. The two elements operate on a

19    sliding scale such that the more significant one is, the less significant the other need be. *Id.* at

20    743. A claim of unconscionability cannot be determined merely by examining the face of the

21    contract; there must be an inquiry into the circumstances under which the contract was executed,

22    its purpose, and effect. *Id*.

23

24

1

### 1.   **Procedural Unconscionability**

2

A contract or clause is procedurally unconscionable if it is a contract of adhesion. *Flores*

3

*v. Transamerica HomeFirst, Inc.,* 93 Cal. App. 4th 846, 853, 113 Cal. Rptr. 2d 376 (2001). A

4

contract of adhesion, in turn, is a "standardized contract, which, imposed and drafted by the party

5

of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere

6

to the contract or reject it." *Armendariz v. Foundation Health Psychcare Serv.*, 24 Cal. 4th 83,

7

113 (2000) (citations and internal quotation omitted)

8

See *Steven v. Fidelity & Casualty Co.*, 58 Cal.2d 862, 882, 27 Cal.Rptr. 172, 377 P.2d

9

284, 297 (1962), where the court stated:

10

11

12

"[A contract of adhesion] refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other;  such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a "take it or leave it" basis, without opportunity for bargaining and under such conditions that the "adherer" cannot obtain the desired product or service save by acquiescing in the form agreement."

13

14

The PayPal click wrap UA has all the hallmarks of an adhesion contract. It is prepared by

PayPal and presented to users who can either accept it or cancel their account.

15

### 2.   **Substantive Unconscionability and Forum Selection**

16

17

Substantive unconscionability has been found in many cases based upon arbitration

18

provisions requiring arbitration of the weaker party's claims but permitting a choice of forums

for the stronger party. See, e.g., *Ticknor*, 265 F.3d at 940-41; *Mercuro v. Superior Cour*t, 96 Cal.

19

App. 4th 167, 176, 116 Cal. Rptr. 2d 671 (2002).

20

21

PayPal is more likely to avoid liability in Delaware because there is a larger body of

California case law which protects consumers from just the sort of actions taken by PayPal,

22

whereas Delaware's consumer protections are less extensive.

23

24

A forum selection clause is invalid "if enforcement would contravene a strong public

policy of the forum in which suit is brought." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1,

OPPOSITION TO MOTION TO COMPEL ARBITRATION

15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972).

"While California's consumer protection statutes cannot prevent enforcement under the FAA of a prohibition on collective actions as such, a federal court properly may consider whether such a prohibition in combination with other provisions and circumstances renders an agreement substantively unconscionable as a matter of state law." *Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165, 1175-1176, 2002 U.S. Dist. LEXIS 16364 (N.D. Calif., 2002).

If the "place and manner" restrictions of a forum selection provision are "unduly oppressive," see *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909-10, 104 Cal. Rptr. 2d 888 (2001), or have the effect of shielding the stronger party from liability, see *Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002), then the forum selection provision is unconscionable.

Other than PayPal being a Delaware corporation, Delaware has no relationship with the transactions at issue in this case. PayPal's based in California. PayPal's legal team is based in California. Two Class Claimants reside in California. PayPal users' interests in being protected by California law where an out-of-state company is seizing customer funds is a greater nexus and public policy concern than enforcing a Delaware choice of law provision, where Delaware has no connection with the issues at stake in this case.

### 3.  PayPal's Seizure of Funds Shocks the Conscience.

The substantive component is satisfied by overly harsh or one-sided results that "shock the conscience." *Blake v. Ecker*, 93 Cal. App. 4th 728, 741, 113 Cal. Rptr. 2d 422 (2001). Since PayPal's Motion seeks to compel Plaintiffs to individual arbitration the Court may look at the effect that both the arbitration agreement and class action waiver have when taken together. These two provisions taken together would mean that PayPal could just take $10.00 out of every single one of millions of users' accounts, raising hundreds of millions of dollars for itself without

any repercussions. Such an amount would be too small for each claimant to arbitrate, and the class action waiver would prevent the claims from being resolved en masse. The arbitration agreement goes even further preventing the use of doctrine of estoppel to force every claimant to relitigate the issue every time. Such an effect clearly shocks the conscience of any reasonable individual.

There is another effect which must be raised here. When PayPal seizes money from user accounts, one of the reasons it cites is a violation of the acceptable use policy. Some actions which constitute violations of the acceptable use policy are illegal gambling and sale of illegal items such as counterfeit merchandise. By PayPal seizing the balance of an account it suspects of illegal activity it is making itself the sole beneficiary of that illegal activity and potentially complicit in the crime.

This argument is similar to an *in pari delicto* argument, namely, PayPal is a willing participant in transactions even it believes violates its own agreements.  Under PayPal's UA (namely Section 8 of the Agreement is dedicated to all of the fees PayPal will take from users for various transactions), PayPal is entitled to a fee on each and every payment sent using its service (which fee is taken out of a seller's or money recipient's account).

PayPal does not care whether the transaction is illegal, fraudulent, violates any provision of the UA, or is a simple, garden variety transaction----it takes its fair share of the payments whenever, however and to whomever they are made.

That is, PayPal is a willing participant in each and every transaction conducted over its website and takes its fee regardless.

PayPal also double dips in the event it takes money from a user under its liquidated damages policy.  PayPal has already taken a transaction fee from a consumer, yet also insists on a $2,500 per occurrence liquidated damages fee.  This is but further evidence of

1    unconscionability, PayPal participates in every transaction by taking its fee, even if that

2    transaction violates PayPal's agreements.

3        **4.   The Arbitration Clause Contains an Anti-Class Action Provision Which**
         **Violates California's Public Policy.**
4

5        While *Concepcion* has held that class action agreements with anti-class action provisions

6    are lawful under the Federal Arbitration Act ("FAA"), the analysis still requires an examination

7    of unconscionability factors under state law.

8        Where the agreement containing an arbitration clause is found to be unconscionable, or

9    where the arbitration clause is itself unconscionable, agreements and/or arbitration clauses which

10   prohibit class action lawsuits or contain a class action waiver provision may be unenforceable as

11   violating public policy.

12       The California Supreme Court ruled in *McGill v. Citibank*, N.A., 2 Cal.5th 945 (2017),

13   that a contract purporting to waive a party's right to seek public injunctive relief (an injunction

14   requiring the defendant company to change the way it does business with all California residents)

15   in any forum under California's Consumer Legal Remedies Act or Unfair Competition Law is

16   unenforceable.

17       The Ninth Circuit recently held that the FAA does not preempt the *McGill* rule.  *See Blair*

18   *v. Rent-A-Center*, Inc., 928 F.3d 819 (9th Cir. 2019); *Tillage v. Comcast Corp.*, 772 Fed.Appx.

19   569 (9th Cir. 2019); *McArdle v. AT&T Mobility LLC*, 772 Fed.Appx. 575 (9th Cir. 2019).

20       Central to the Ninth Circuit's holding was the fact the McGill rule is a "generally

21   applicable contract defense" that applies "equally to arbitration and non-arbitration agreements"

22   and does not single out arbitration agreements for disfavored treatment.  *See Blair*, supra, 928

23   F.3d at 827.

24       On June 8, 2020, the United States Supreme Court denied certiorari, refusing to review

the Ninth Circuit's decisions in the *Tillage v. Comcast* and *McArdle v. AT&T Mobility* cases,

OPPOSITION TO MOTION TO COMPEL ARBITRATION

- 17 -

passing up the opportunity to strike down the McGill rule.

The Supreme Court's refusal to wade into this debate means that the *McGill* rule remains good law and bars companies from requiring their customers to waive their right to seek public injunctive relief.  Companies must deal with the fact that a federal or California state court has the power to hear a California consumer's claim for a public injunction that would require the company to change the way it does business with all California residents.

Here, there is no doubt thousands of consumers will be denied their rights to proceed with their claims if it cannot proceed by class action.  Many consumers have low value claims, meaning they will be unable to obtain attorneys or pay arbitration fees over claims that are less than the value of the filing fee.  Even a small claims action is a very limited remedy for a consumer with a low dollar claim, requiring a substantial amount of time, money and effort to recover a nominal amount of money.  While permissible, it does not mean they are fair, and combined with all the other unfairness within the agreement, this clause is a further significant factor in proving unconscionability.

### 5.  The Arbitration fees can also greatly exceed the cost of litigation.

Unlike the arbitration clause in Concepcion, which was exceptionally fair to consumers, the potential fees in arbitration are potentially tens to hundreds of thousands of dollars in any claim exceeding $10,000.  Section 14.3 ( c) notes, "If the value of the relief sought is more than $10,000 and you are able to demonstrate that the costs of arbitration will be prohibitive as compared to the costs of litigation, PayPal will pay as much of the filing, administration, and arbitrator fees as the arbitrator deems necessary to prevent the arbitration from being cost-prohibitive."

An action filed in state or federal court has a filing fee, and possibly some other associated costs such as motion filing fees, etc.  An arbitration has significantly higher fees such

as initiation fees, and arbitrators that can cost well in excess of $1,000 per hour (even split 50/50 means a party can easily pay several thousands of dollars per day for arbitrator time).  Under the arbitration agreement, any claim in excess of $10,000, requires the user to make a showing that the cost of arbitration is "prohibitive" as compared to litigation costs and Paypal is only required to pay such costs as the arbitrator deems necessary to prevent the arbitration from being cost-prohibitive.  That is, there is a cost certainty to court litigation, whereas as a consumer is required to make a showing that the costs of arbitration are "prohibitive" and the determination as to what a consumer must pay is wholly within the discretion of the arbitrator.  Potentially, in a major arbitration, a consumer could be responsible for fees several hundred times the cost of a litigation or more.  This provision also renders the arbitration clause unfair.

However, in *American Express Co v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013), the Supreme Court rejected the argument that class action waivers and arbitration clauses should not be enforced when prosecuting individual claims in arbitration would be cost prohibitive.

### 6.  <u>Other Violations Which Also Render the Agreements Unconscionable</u>.

PayPal denies users the benefit of offensive non-mutual collateral estoppel.  Paragraph 14.3 (b) states: "The arbitrator shall not be bound by rulings in prior arbitrations involving different PayPal users, but is bound by rulings in prior arbitrations involving the same PayPal user to the extent required by applicable law."  Offensive, non-mutual collateral estoppel is a very strong protection for consumers against businesses, and PayPal has attempted to strip this legal protection from all consumers.

PayPal has the right to be indemnified by users, but users have no right to be indemnified by PayPal should it commit violations (Agreement Paragraph 14.6)

In the event of disputes, PayPal requires users to automatically waive California Civil Code section 1542 (Agreement Paragraph 14.8);

Pursuant to Paragraph 15.1, there is a full waiver of liability to protect PayPal, and 15.2 waives all warranties;

Section 5.5 grants PayPal a security interest in all funds held in a user's account.

### E.  The Entire TOS Agreement With all Members of the Public is Illusory, Thus Rendering the Entire Agreement (Including the Arbitration Clause) Void.

In the instant case, PayPal has the complete and unfettered ability to: 1. Determine whether or not a user violates the UA/AUP; 2. Freeze the user's account while PayPal conducts an internal investigation; 3. Refuse to tell the user the nature of the claimed violation, or permit the user to have any input in PayPal's clandestine internal investigation or defense/explanation to provide some form of proof to counter the undisclosed violation; 4. Identify the nature of the violation or even tell the user that the user has committed a violation other than a notice that there has been a violation; 5. Take all the money in a user's account.  Here, PayPal has granted itself the absolute authority to act as judge, jury and collection agent, leaving users with no remedy, option or even notice and opportunity to be heard.  This is not merely the case in theory, it is the case in practice, as PayPal has drained every cent out of thousands of user's accounts. PayPal's complete, unfettered ability to declare a violation, as well as take all of the money out of a user's account renders this contract illusory, and thus, void.

According to the language of the UA PayPal has complete and unfettered discretion to freeze, investigate and drain a user's account. In practice, this process is far worse, as PayPal not only has complete discretion over the funds in a user's account, but PayPal also refuses to inform users of any alleged violation (often informing them to get a subpoena), refuses to either use a neutral third party to investigate the claim, refuses to permit a user to have any opportunity to be heard or refute the claimed (yet undisclosed) violation of the AUP, and then, having decided for itself, absconds with every cent in the user's account, and thereafter closing it.

Thus, the user has no notice of the claimed violation, no right to present a defense or

1    explanation, has his or her account frozen, and then wakes up to find that PayPal has decided **in

2    its sole discretion**, that it is entitled to and has taken every cent in the user's account for itself.

3    Therefore, both in theory and in practice, Paypal has complete, unfettered discretion to determine

4    a violation of the agreements and take its remedy against a user.  This is the very hallmark of an

5    illusory contract, one side has complete discretion to determine a violation of the agreement

6    (leaving the other side with no notice or opportunity to be heard) and the discretion to even take

7    a user's money to cover its own claimed damages.

8          As was the case at common law, and in both California and Delaware, an illusory

9    contract is void.  *Bleecher v. Conte*, 29 Cal.3d 345, 350 (1981), sets forth the general rule on

10   illusory contracts when a party has complete discretion to determine rights and remedies under a

11   contract:

12          "If a party is not assuming a legal duty in making a promise, the agreement is not binding as
             a bilateral contract. This court expressed the rule in *Mattei v. Hopper* (1958) 51 Cal.2d 119,
13          at page 122, 330 P.2d 625: "[w]hen the parties attempt ... to make a contract where promises
             are exchanged as the consideration, the promises must be mutual in obligation. In other
14          words, for the contract to bind either party, both must have assumed some legal obligations.
             Without this mutuality of obligation, the agreement lacks consideration and no enforceable
15          contract has been created." (See also Civ.Code, § 3391, subd. 1.)  (Id. at 350)."

16         In 2010, the California Supreme Court dealt with the issue of illusory contracts in *Steiner

17   v. Thexton*, 48 Cal. App.4th 411, 418 (2010) (because of the escape clause, Steiner was not

18   obligated to do anything).  In *Steiner*, the issue dealt with whether a real estate purchase

19   agreement constituted a bilateral contract or merely a unilateral option agreement.  The contact at

20   issue gave the buyer the complete and unfettered decision to cancel the agreement at any time

21   and for any reason, which the Court referred to as an "escape clause."

22         In noting the initial contract was illusory and void, the California Supreme Court stated,

23          "It is true that Steiner's promise to undertake the burden and expense of seeking a parcel
             split may have been illusory at the time the agreement was entered into, given the
24          language of the escape clause." (Id. at 422).

While *Steiner* was decided on other grounds (dealing with separate consideration for options), the California Supreme Court was more than willing to agree that the unbound discretion to terminate an agreement initially rendered the agreement illusory, or, at most a unilateral option contract. *Steiner* also dealt with the other crucial issue on illusory contracts, whether the implied covenant of good faith and fair dealing provides a consideration substitute which would render a contract subject to the discretion of one party valid.

*Steiner* flatly rejected this premise, noting:

> "Fourth, plaintiffs argue the Court of Appeal should have applied the implied covenant of good faith and fair dealing to narrow the escape clause to give Steiner only a limited power to terminate the agreement. We disagree. While this court has held that all contracts impose a duty of good faith and fair dealing and that the covenant particularly applies when "one party is invested with a discretionary power affecting the rights of another" (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc*. (1992) 2 Cal.4th 342, 372, 6 Cal.Rptr.2d 467, 826 P.2d 710), it has also noted the implied covenant does not trump an agreement's express language (id. at p. 374, 6 Cal.Rptr.2d 467, 826 P.2d 710). " 'The general rule [regarding the covenant of good faith] is plainly subject to the exception that the parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing.' " (Ibid.) **Given the broad and express language of the escape clause, Steiner's power to withdraw was not constrained by the implied covenant of good faith and fair dealing.**" (Id. at 419-420, emphasis added).

As is apparent in both theory and practice, PayPal is not constrained by the implied covenant of good faith and fair dealing.  Rather PayPal has complete discretion to determine violations and take a user's money for itself.  PayPal's agreement is designed to benefit itself, and PayPal is highly motivated to find (or create) violations whenever and wherever it can, as the price of each and every claimed violation is $2,500 right into PayPal's pocket. PayPal has a readily available source to collect its claimed damages, the very funds in the user's account it has already elected (in its sole discretion) to freeze.

A party cannot possibly rely upon the implied covenant of good faith and fair dealing when it is financially motivated to use such discretion to determine a violation and then use that determination to take funds for itself.

OPPOSITION TO MOTION TO COMPEL ARBITRATION

1      The liquidated damages section of the TOA is somewhat backwards and far different

2  from a traditional situation.  Generally, the parties litigate over whether the liquidated damages

3  clause is proper in a lawsuit to determine if there has even been a breach at all.  That is, in a

4  traditional scenario, a trier of fact determines if there is a breach of an agreement, if a liquidated

5  damages clause is lawful, and then awards a judgment which must be lawfully collected.

6      Here, the situation for consumers is wholly reversed.  PayPal determines violation

7  without any hearing, has simply assumed its liquidated damages clause is lawful (it is not) and

8  then acting as collection agent, loots a user's account, leaving the user to have to initiate

9  litigation to get their funds back.  As will be discussed in the unconscionability section this is a

10  grossly unfair procedure which is harmful to consumers.

11      PayPal's contract is illusory as PayPal has unlimited discretion to freeze a user's account,

12  conduct an internal investigation, giving a user no notice or opportunity to be heard, determining

13  its own damages and then draining a user's account.  This the very essence of an illusory

14  contract, one side has complete discretion to declare a breach and take all available funds as its

15  own damages.  Therefore, the contract, as an illusory contract in both theory and practice is void

16  and all clauses and terms therein, including the arbitration clause are rendered null, meaning the

17  motion must be denied.

18      There is a line of California and common law cases, holding that private organizations

19  such as hospitals (doctor privileges) and private country clubs must afford a party minimal due

20  process rights of notice and opportunity to be heard before expulsion or to deny membership

21  (starting with *Pinsker v Pacific Coast Society of Orthodontists*) (1974) 12 Cal.3d 541. *Pinsker*

22  also cites the ancient common law rule which is similar, citing *Falcone v. Middlesex County*

23  *Medical Society* (1961) 34 N.J. 582, 170 A.2d 791,  "As Falcone recognized, one of the earliest

24  and most influential decisions applying common law principles to a private association's

1   exclusion from membership was Chief Justice Givson's celebrated opinion for this court

2   in *James v. Marinship Corp.* (1944) 25 Cal.2d 721, 155 P.2d 329, invalidating a labor union's

3   policy of excluding blacks from full membership. In *Marinship* our court declared: 'Where a

4   union has . . . attained a monopoly of the supply of labor . . . such a union occupies a quasi public

5   position similar to that of a public service business and it has certain corresponding obligations.

6   It may no longer claim the same freedom from legal restraint enjoyed by golf clubs or fraternal

7   associations. Its asserted right to choose its own members does not merely relate to social

8   relations, it affects the fundamental right to work for a living. (Citation.)' (25 Cal.2d at p. 731,

9   155 P.2d at p. 335.)

10        Later, 'In this state 'a member of an unincorporated association may not be suspended or

11   expelled . . . without charges, notice and a hearing, even though the rules of the association make

12   no provision therefor. " (*Swital v. Real Estate Commissioner, Supra*, 116 Cal.App.2d 677, 679,

13   254 P.2d 587, 588; *Cason v. Glass Bottle Blowers Assn., Supra*, 37 Cal.2d 134, 143—144, 231

14   P.2d 6.) this requirement of procedural fairness has been an established part of the California

15   common law since before the turn of the century. (See, e.g., *Von Arx v. San Francisco Gruetli*

16   *Verein, Supra, 113 Cal. 377, 45 P. 685; Otto v. Tailors' P. & B. Union*, Supra, 75 Cal. 308,

17   314—315, 17 P. 217.)

18        In this case, 1. PayPal is an organization (and, in fact one of the only, and likely the first

19   significant organization that accepted digital payments allowing businesses and users to collect

20   funds over the internet); 2. PayPal provides no notice or opportunity to be heard; 3. Many people

21   rely upon PayPal membership and use thereof to collect payments to make their living, making

22   PayPal an all but necessary service organization for thousands of users and sellers--like the labor

23   unions in the aforecited James opinion, PayPal absolutely acts as a quasi public service and

24   affects the fundamental right to make a living by accepting payments over the internet; 4. it is

even worse here because not only does PayPal terminate membership and usage without notice or opportunity to be heard, it also does so to determine its own damages based upon claims of violation wherein PayPal takes the users' money for itself.  Thus, PayPal's current situation can never be fair or involve proper due process not only because of the lack of notice and opportunity to be heard, but also because the decision maker is self-interested, if PayPal determines a violation, it awards itself all the money held from each user's claimed (but undisclosed violations), meaning the decision can never be a fair or unbiased one.

**F.  The Liquidated Damages Provision is Void as An Unlawful Penalty Further Evidencing the Unconscionability And Illusory Nature of The UA**

Both Delaware and California law hold that a liquidated damages provision that fails to make a reasonable approximation of actual damages is void, unenforceable and must be stricken. See, e.g., *Ridgley v. Topa Thrift & Loan Assn.*, 17 Cal.4th 970, 977 (1998) ("A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671(b) if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach."); *Atl. Aviation Corp. v. Provident Life & Acci. Ins. Co.,* 1989 U.S. Dist. LEXIS 10261, *17 (D. Delaware, 1989) ("Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.").

There is absolutely no way that each and every violation, regardless of the value, egregiousness of the violation, number of investigations and any other circumstances making each claim unique, could result in the same financial harm to PayPal.

///

1

## IV.   CONCLUSION

2      PayPal has created a situation which results in gross inequity to consumers and users of

3  its site.  PayPal has the complete, unfettered right to freeze a user's account, investigate (or claim

4  to investigate), based upon an internal process, where the user is given no right to know of the

5  alleged violations, or present any evidence or support (to a neutral third party or otherwise) to

6  rebut the claims.

7      Then, in virtually every situation, PayPal determines that the user has, in fact violated

8  some term of the UA/AUP or otherwise, and then, under an unlawful liquidated damages clause,

9  takes all of the money in the user's account for itself.  This scenario has created an illusory

10  contract, rendering it, and all clauses therein, void.  This process also renders the entire

11  agreement (along with numerous other unconscionable provisions) unconscionable further

12  voiding the arbitration clause.

13      Therefore, PayPal's motion to compel arbitration must be denied.

14

15   Dated: April 22, 2022                    By: /s/ Eric Bensamochan

16                                                Eric Bensamochan, Esq.
                                                 Counsel for Plaintiffs

17

18

19

20

21

22

23

24