UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LENA EVANS, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>PAYPAL, INC.,<br><br>　　　　　Defendant. | Case No. 22-cv-00248-BLF<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>[Re: ECF No. 20] |

In this case, Plaintiffs seek to represent a class of individuals whose accounts with Defendant PayPal, Inc. were frozen after PayPal alleged that the account holders had violated PayPal's User Agreement or Acceptable Use Policies. If PayPal finds an alleged violation of those policies, PayPal allegedly seizes all the funds in the account as liquidated damages. Plaintiffs bring nine claims challenging this practice.

Now before the Court is PayPal's motion to compel arbitration. *See* ECF No. 20 ("MTC"); *see also* ECF No. 36 ("Reply"). PayPal argues that its User Agreement contains an arbitration agreement and class action waiver that covers all of the claims asserted in this lawsuit. Plaintiffs oppose the motion to compel. *See* ECF No. 25 ("Opp."). The Court previously found this motion appropriate for disposition without oral argument and vacated the hearing. *See* ECF No. 35; Civ. L.R. 7-1(b). For the following reasons, the Court GRANTS the motion to compel arbitration and DISMISSES this action without prejudice to filing a later action to confirm or vacate the arbitration award.

**I.　BACKGROUND**

As alleged in the Complaint, Plaintiffs Lena Evans, Roni Shemtov, and Shbadan Akylbekov each have accounts with Defendant PayPal, Inc. through which they receive and send

online payments. ECF No. 1 ("Compl.") ¶¶ 23–25. When they signed up for their PayPal accounts, Plaintiffs agreed to the PayPal User Agreement ("UA").[1] *See* ECF No. 20-1 ("Squires Decl.") Exs. 4–5. PayPal's UA has included some form of alternative dispute resolution provision since its inception. Squires Decl. ¶ 10. In a November 2012 update to its UA, PayPal modified the dispute resolution procedure to include an explicit agreement to arbitrate and class action waiver. *Id.* ¶¶ 10, 13, 14. The UA specifies that continued use of PayPal's services after the effective date of changes to the UA constitutes agreement to the changes. *Id.* ¶ 9. Each Plaintiff continued to use PayPal after November 1, 2012. Compl. ¶¶ 45, 52, 67.

The UA states in its initial paragraphs that it contains an agreement to arbitrate. *See* Squires Decl. Ex. 4 at 2 (Nov. 1, 2012 agreement: **"Please be advised: This Agreement contains provisions that govern how claims you and we have against each other are resolved (see Section 14 "Disputes with PavPal" below). It also contains an Agreement to Arbitrate, which will, with limited exception, require you to submit claims you have against us to binding and final arbitration, unless you opt out of the Agreement to Arbitrate (see Section 14.3 "Agreement to Arbitrate") by December 1, 2012. Unless you opt out: (1) you will only be permitted to pursue claims against PavPal on an individual basis, not as a plaintiff or class member in any class or representative action or proceeding, and (2) you will only be permitted to seek relief (including monetary. iniunctive, and declaratory relief) on an individual basis."**); *id.* Ex. 5 at 2 (current version: "These terms include an agreement to resolve disputes by arbitration on an individual basis."). The arbitration provision itself, in relevant part, states:

> You and PayPal each agree that any and all disputes or claims that have arisen or may arise between you and PayPal, including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter

---

[1] The Court finds that the UA is incorporated by reference into the Complaint and is properly considered for this motion. *See Trudeau v. Google*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018) (finding that Google's Terms of Service was incorporated by reference into the complaint). Plaintiffs have not disputed that the versions of the UA attached to PayPal's motion are authentic.

2

> remains in such court and advances only on an individual (non-class, non representative) basis. This Agreement to Arbitrate is intended to be broadly interpreted. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.

*Id.* Ex. 5 at 49.[2] The UA also includes a class action waiver:

> You and PayPal agree that each of us may bring claims against the other only on an individual basis and not as a plaintiff or class member in any purported class or representative action or proceeding. Unless both you and PayPal agree otherwise, the arbitrator(s) may not consolidate or join more than one person's or party's claims and may not otherwise preside over any form of a consolidated, representative or class proceeding. Also, the arbitrator(s) may award relief (including monetary, injunctive and declaratory relief) only in favor of the individual party seeking relief and only to the extent necessary to provide relief necessitated by that party's individual claim(s). Any relief awarded cannot affect other PayPal customers.

*Id.* Ex. 5 at 49-50; *accord id.* Ex. 4 at 22 (materially similar language in Nov. 1, 2012 UA). The UA also specifies certain "Restricted Activities" that users of PayPal agree not to do, including activities that violate PayPal's separate "Acceptable Use Policy" ("AUP"). *See* UA at 31–34. PayPal states, and Plaintiffs do not dispute, that during the sign-up process, each Plaintiff assented to the UA by (1) checking a box next to language stating that he or she had "read and agree[d] to the User Agreement;" and then (2) clicking a button stating "Agree and Create Account," or materially similar language. Squires Decl. ¶¶ 5–6; *see also id.* ¶¶ 18–19, 20, 21 (stating that each Plaintiff assented to the UA upon creating an account with PayPal).

Plaintiffs allege that PayPal suspended their accounts for alleged violations of the AUP. Plaintiff Lena Evans alleges that PayPal froze her account on November 22, 2020 and approximately six months later seized $26,084.00 from her account. Compl. ¶¶ 49, 50. Plaintiff Roni Shemtov alleges that PayPal froze her account in March 2017 and seized a total of $42,737. *Id.* ¶¶ 53, 64. Plaintiff Shbadan Akylbekov alleges that several of his and his wife's PayPal accounts became "limited" beginning in around March 2020 and that PayPal eventually seized

---

[2] The November 12, 2012 arbitration provision contains only the following language: "You and PayPal each agree that any and all disputes or claims that have arisen or may arise between you and PayPal shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate." Squires Decl. Ex. 4 at 22. Plaintiffs do not argue that the differences in these provisions are material.

3

$172,206.43 from the accounts. *Id.* ¶¶ 72, 77.

Plaintiffs filed this lawsuit on January 13, 2022. *See* Compl. Plaintiffs assert claims for conversion, civil violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), violation of the Electronic Funds Transfer Act, breach of written contract, breach of fiduciary duty, violation of California Business & Professions Code § 17200, unjust enrichment, declaratory relief, and accounting. *See id.* ¶¶ 103-229. Plaintiffs seek to represent a class of all PayPal users who had funds seized from their accounts by PayPal based on purported breaches of PayPal's Acceptable Use Policy. *Id.* ¶ 96.

The Court granted PayPal's motion to relate this case to *Cheng v. PayPal, Inc.*, No. 21-cv-3608 (N.D. Cal., filed May 13, 2021). On the same day that Plaintiffs filed this case, the Court granted PayPal's motion to compel arbitration in *Cheng*. 2022 WL 126305 (N.D. Cal. Jan. 13, 2022). The Court found that the arbitration provision in PayPal's User Agreement applied to the dispute over PayPal's liquidated damages policy, and that the arbitration provision was valid and enforceable under Delaware law. *Id.* at *7. The Court compelled arbitration and dismissed the case without prejudice to filing a later action to confirm or vacate the arbitration award. *Id.* PayPal heavily relies on *Cheng* in this motion. Plaintiffs do not address *Cheng*.

**II.     LEGAL STANDARD**

   **A.     FAA**

Under the Federal Arbitration Act, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Benson v. Casa de Capri Enters., LLC*, 980 F.3d 1328, 1330 (9th Cir. 2020); *see also Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002) (same under Delaware law). Under the FAA, a court must determine two issues in deciding a motion to compel arbitration: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Doe v. Massage Envy Franchising, LLC*, 2020 WL 7624620, at *2 (Del. Super. Ct. Dec. 21, 2020).

4

### B.     State Substantive Law

The parties dispute which state's law governs interpretation of the UA. PayPal asserts that Delaware law governs because of the Delaware choice of law provision in the UA. *See* MTC at 6; UA at 57 ("You agree that . . . the laws of the State of Delaware, without regard to principles of conflicts of laws, will govern this user agreement and any claim or dispute that has arisen or may arise between you and PayPal."). Plaintiffs assert that the Delaware choice of law provision is unenforceable because Delaware has no substantive relationship to the parties or the transactions at issue here. Opp. at 4–5.

The Court agrees with PayPal that the Delaware choice of law provision is enforceable. *See Cheng*, 2022 WL 126305, at *2 (applying Delaware choice of law provision in UA). Plaintiffs' arguments against the choice of law provisions are unconvincing. First, the FAA (which Plaintiffs recognize governs the UA) "allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions, including […] enforceability of a class-arbitration waiver." *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53–54 (2015) (upholding choice of law and class arbitration waiver provisions). Second, and contrary to Plaintiffs' argument otherwise, even if the Court were to apply a California choice-of-law analysis notwithstanding the choice-of-law provision, that PayPal is incorporated in Delaware creates a substantial relationship between this dispute and the parties and transactions at issue that would lead to applying Delaware substantive law. *ABF Cap. Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005). Both California and Delaware favor enforcement of choice of law provisions in contracts. *See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev., LLC*, 55 Cal. 4th 233, 235 n.4 (2012); *Graham v. State Farm Mut. Auto Ins. Co.*, 565 A.2d 908, 913 (Del. 1989). And finally, California's public policy against waivers of public injunctive relief, *see McGill v. Citibank N.A.*, 2 Cal. 5th 945, 952 (2017), does not apply in this case where Plaintiffs seek private injunctive relief against PayPal's liquidated damages provision in the AUPs to which Plaintiffs individually agreed. *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 870–71 (9th Cir. 2021) (injunction regulating contract is private relief); *contra* Opp. at 7. The Court will thus apply Delaware substantive law in answering the two FAA questions above. *Ebner v. Financial*

*Architects, Inc.*, 763 F. Supp. 2d 697, 700 (D. Del. 2011) ("When an agreement contains both a choice-of-law clause and an arbitration clause, the reviewing court will apply the substantive law of the state named in the choice of law clause.") (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63–64 (1995)).

### III.   DISCUSSION

The Court now considers the two FAA questions to determine if the motion to compel arbitration should be granted. *Brennan*, 796 F.3d at 1130. As it did in *Cheng*, the Court finds that Plaintiffs' claims must proceed in arbitration rather than in this Court.

#### A.   The Agreement to Arbitrate Covers this Dispute

The Court first finds that the answer to the second FAA question—"whether the [arbitration] agreement covers the dispute"—is yes. *Brennan*, 796 F.3d at 1130. The arbitration agreement states that "any and all disputes or claims that have arisen or may arise" between Plaintiffs and PayPal, "including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding arbitration, rather than in court." UA at 49. This lawsuit is a dispute that has arisen between Plaintiffs and PayPal, and it includes both federal and state statutory claims and "common law claims. *See* Compl. ¶¶ 103-229.

Plaintiffs do not dispute these points. The only argument they make against the coverage of the arbitration provision is that PayPal has not met its burden to show that Plaintiffs actually consented to the agreement. *See* Opp. at 2. Plaintiffs are correct that PayPal bears that burden, but the Court finds that PayPal has met it. Declarations detailing a customer sign-up process that includes assenting to an arbitration agreement, along with allegations that Plaintiffs opened such accounts, are sufficient to meet a movant's initial burden to show assent to arbitration. *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 989-90 (N.D. Cal. 2017); *Cheng*, 2022 126305, at *3. PayPal has provided a declaration describing the process through which each Plaintiff signed up for his or her PayPal account. *See* ECF No. 20-1 ("Squires Decl.") ¶¶ 4–8. Plaintiffs do not dispute the process shown in the declarations, which includes a checkbox manifesting assent to the UA that included the arbitration provision. PayPal has thus met its burden to show that Plaintiffs

6

entered into the arbitration agreements.

### B. The Agreement to Arbitrate is Valid and Enforceable

The remainder of the parties' dispute concerns whether the arbitration agreement is valid and enforceable. Plaintiffs make several arguments against enforcement of the provision. Opp. at 3-4, 6-10. The Court analyzes these arguments in the context of unconscionability under Delaware law. A contract provision is unconscionable under Delaware law only if "no man in his senses and not under delusion would make [it] on the one hand, and as no honest or fair man would accept [it], on the other." *Tulowitzki v. Atlantic Richfield Co.*, 396 A.2d 956, 960 (Del. 1978). Ignoring the dated language of the Delaware test, this formulation has been divided into procedural unconscionability—the lack of a meaningful choice—and substantive unconscionability—unreasonably favorable arbitration terms to one party. *Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, 2002 WL 1558382, at *11 n.46 (Del. Ch. Jul. 9, 2002). It is Plaintiffs' burden to prove unconscionability. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). Plaintiffs' arguments that the arbitration agreement is unconscionable fit in both categories, but none of the arguments is convincing.

#### i. Procedural Unconscionability

Plaintiffs make multiple arguments that the arbitration agreement is procedurally unconscionable. First, Plaintiffs argue that PayPal presents the UA as a take-it-or-leave-it agreement for which PayPal has unilateral control over the terms. *See* Opp. at 6, 7. But "[u]nequal bargaining power, without more, is insufficient to hold an arbitration agreement unconscionable." *Wells v. Merit Life Ins. Co.*, 671 F. Supp. 2d 570, 574 (D. Del. 2009); *see Mikkileneni v. PayPal, Inc.*, 2021 WL 2763903, at *12 (Del. Super. Ct. Jul. 1, 2021) ("An otherwise clear intent to arbitrate will not be invalidated merely because a party did not negotiate the arbitration provision or participate in its drafting."). The case that Plaintiffs cite in this context pre-dates relevant Supreme Court precedent on arbitration agreements—most importantly, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)—and so is not persuasive authority.

Second, Plaintiffs appear to argue that the arbitration agreement is hidden within the UA. *Cf.* Opp. at 6 (claiming unconscionability present where there exist "hidden terms common in the

7

1  context of adhesion contracts"). But under Delaware law, "a party may assent to an agreement on
2  the internet without reading its terms and still be bound by it if she is on notice that she is
3  modifying her legal rights, just as she may with a physical written contract." *Newell Rubbermaid*
4  *v. Storm*, 2014 WL 1266827, at *7 (Del. Ch. Mar. 27, 2014). Plaintiffs were on notice that they
5  were modifying their legal rights. They checked a box recognizing that they were agreeing to the
6  UA and then clicked a separate button saying "Agree and Create Account." *E.g.*, Squires Decl.
7  ¶ 6. Because they were clearly on notice that their legal rights were being modified, whether they
8  did or did not read the UA is irrelevant. Even so, if they did open the UA, its first page indicated
9  that the UA contained an arbitration agreement. UA at 2. The location of the arbitration
10 agreement in the UA does not make the arbitration agreement unconscionable.

11 Finally, the Court finds it important to note that Plaintiffs could have opted out of the
12 arbitration provision. This Court has previously looked favorably on the opt-out opportunity
13 offered in PayPal's UA. *See Cheng*, 2022 WL 126305, at *4; *see also Mikkilineni*, 2021 WL
14 2763903, at *11 (existence of opt-out provision made the arbitration clause "neither compulsory
15 nor a mandatory condition to contracting with [defendant]"). Plaintiffs do not address the
16 consequences of the opt-out provision.

17 Plaintiffs have thus not shown that the arbitration agreement is procedurally
18 unconscionable.

19       **ii.  Substantive Unconscionability**

20 Plaintiffs make a few attempts to show that the arbitration agreement is substantively
21 unconscionable. First, Plaintiffs argue that the arbitration provision is substantively
22 unconscionable because PayPal is only required to pay arbitration costs if a claimant is seeking
23 less than $10,000, and that if the claim is for higher than that amount, the claimant must show that
24 the cost of arbitration is "prohibitive" and PayPal is only required to pay costs as determined by
25 the arbitrator. Opp. at 8. The Court has previously approved PayPal's cost-shifting provisions in
26 this arbitration agreement. *Cheng*, 2022 WL 126305, at *4. As the Court noted there, "PayPal's
27 promise to advance arbitration fees in certain circumstances does not amount to substantive
28 unconscionability because it does not amount to use of a superior bargaining power 'to take unfair

advantage of another' party." *Id.* "PayPal's offer to advance certain fees helps, not harms, claimants." *Id.*

Second, Plaintiffs argue that the arbitration provision impermissibly prevents the use of the doctrine of collateral estoppel by successful claimants. Opp. at 7. The consequence of this provision is that every claimant must litigate his or her claim individually and cannot rely on a prior claimant's success. *Id.* But as PayPal says, this provision borrows from state-law estoppel rules: an "arbitration award cannot have nonmutual collateral estoppel effect" absent the parties' agreement otherwise. *Vandenburg v. Super. Ct.*, 21 Cal. 4th 815, 836-37 (1999). Plaintiffs cite no case finding that this type of provision is substantively unconscionable.

Plaintiffs make two other arguments they claim concern substantive unconscionability. Plaintiffs argue that (1) PayPal's practice of seizing account balances as liquidated damages is unconscionable; and (2) PayPal's entire terms of service is illusory because of PayPal's "absolute authority" to determine violations of its UA and AUP. Opp. at 7-8, 8-10. But these arguments concern the merits of this dispute, not the unconscionability of the arbitration provision itself. Under the FAA, on this motion to compel the Court may only examine "issues relating to the making and performance of the agreement to arbitrate," not the underlying merits of the dispute. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 448-49 (2006). The Court declines to opine on PayPal's liquidated damages practices, which are at the heart of this case.

Plaintiffs have thus also failed to show substantive unconscionability. Because Plaintiffs have not met their burden to show that the arbitration agreement is unconscionable, the agreement to arbitrate is valid and enforceable. Because PayPal has shown that the claims asserted in this lawsuit are within the scope of the arbitration provision, the Court will DISMISS this action WITHOUT PREJUDICE to filing a later action to confirm or vacate any arbitration award. *See Cheng*, 2022 WL 126305, at *5; *Trudeau v. Google*, 349 F. Supp. 3d 869, 881 (N.D. Cal. 2018).

**IV.   ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that PayPal's motion to compel arbitration is GRANTED. This case is DISMISSED WITHOUT PREJUDICE to filing a later

action to confirm or vacate the arbitration award.

Dated: June 2, 2022

_____
BETH LABSON FREEMAN
United States District Judge